**In re DISTRICT 2, UNITED MINE WORKERS OF AMERICA, by Paul GORMISH, Trustee Ad Litem and Local Union 1723, United Mine Workers of America, by Roger Pleskonko, Trustee Ad Litem, Plaintiffs,**

v.

**Warren H. HINKS, Jr., an individual, Defendant**

v.

**ASSOCIATED DRILLING, INC., Additional Defendant.**

**Bankruptcy No. 85–0099.**
**Adv. No. 86–0212.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 11, 1986.

Robert S. Brierton, Johnstown, Pa., for defendant.

James C. Kuhn, III, Kuhn, Engle & Stein, Pittsburgh, Pa., for plaintiffs.

Kenneth P. Simon, Simon & Simon, Pittsburgh, for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court are Plaintiffs' and Defendant's cross-Motions for Summa-ry Judgment. The issues to be determined are as follows:

1. Is the application of Pennsylvania's Wage Payment and Collection Law ("WPCL"), Pa.Stat.Ann. 43 § 260.1 *et. seq.* (Purdon's), preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et. seq.;* the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et. seq.;* and/or the Bankruptcy Reform Act ("Bankruptcy Code"). 11 U.S.C. § 101 *et. seq.;* and

2. If the WPCL is not preempted by the above-mentioned federal statutes, is Defendant an "employer" pursuant to § 260.-2a of the WPCL, thereby creating joint liability between Defendant and the Debt-or?

Based upon the briefs submitted by the parties, the subsequent oral arguments thereon, and this Court's own research, we find that Pennsylvania's WPCL is preempt-ed by the NLRA.

In a footnote found in *Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 282 n. 5 (3rd Cir.1983), the court summarily stated that:

> The Ambroses also argue that the dis-trict court acted without jurisdiction on the WPCL claims and they further con-tend that the WPCL is preempted by the LMRA and the Employee Retirement In-come Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a)(1976), amended by the Multiemployer Pension Plan Amend-ments Acts of 1980, 29 U.S.C. § 1145 (Supp. V–1981), *we find that these con-tentions are without merit.*

(emphasis added).

*Ambrose* was decided prior to the Su-preme Court's decision in *Allis-Chalmer's Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and the Third Circuit's recent decision in *McMahon v. McDowell*, 794 F.2d 100 (3rd Cir.1986), wherein this particular issue, as it applies to ERISA, has been reevaluated. While we believe that both the Supreme Court and

the Third Circuit would similarly take issue with the *Ambrose* footnote as it applies to the LMRA, we remain bound by the Third Circuit's decision in *Ambrose,* and therefore, find that the LMRA is not preemptive of the WPCL.

We also find that the WPCL is not preempted by the Bankruptcy Code. Having so determined, we do not reach the issue of whether Defendant is an "employer" pursuant to the WPCL.

We further find that this adversary proceeding constitutes a related matter pursuant to 28 U.S.C. § 157(c)(1), and we will therefore submit our proposed Findings of Fact and Conclusions of Law to the district court for a final determination.

## FACTS

The Plaintiffs, Local Union 1723 and District 2 of the United Mine Workers of America, represent those members who were employees of the Debtor, Associated Drilling, Inc. Warren H. Hinks, Jr., the Defendant, has served as the Debtor's President since April 30, 1983; prior to that date, he served as the Debtor's Secretary/Treasurer.

The Debtor was a signatory to the National Bituminous Coal Wage Agreement of 1981 ("NBCWA of 1981"), which became effective on June 7, 1981. Over the course of this contract, the market for the Debtor's product all but evaporated, to the point that the Debtor found itself unable to meet some of its contractual responsibilities for wages and fringe benefits. In 1983, the Debtor, through the Defendant, and its employees worked out an arrangement, whereby certain benefits due the employees would be paid over time rather than in a lump sum.

This arrangement proceeded for a period of about one (1) year. Due in large part to a loss of its primary customer, the Debtor fell further into economic distress. On August 29, 1984, the Defendant, as President of the Debtor, notified the employees that the company would be unable to meet the payroll due on August 31, 1984, which constituted payment for the period of August 3, 1984 to August 17, 1984. The employees then declared a strike; they have not returned to work. The Debtor's position continued to decline, causing it to file a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on January 15, 1985.

The Plaintiffs brought suit against the Defendant in the Court of Common Pleas of Cambria County, Pennsylvania in September of 1985. Said suit alleged that Defendant was liable for the payment of certain wages and benefits under the definition of "employer" in the WPCL. In December of 1985, Defendant requested the joinder of the Debtor as an additional Defendant. Thereafter, the Debtor petitioned for removal of the state court action to the District Court for the Western District of Pennsylvania. Pursuant to the General Order of Reference in this district, this action was referred to our Court for determination.

## ANALYSIS

In these cross-Motions For Summary Judgment, we are not presented with questions as to damages, nor are we asked to address certain issues raised in the Original Complaint, *inter alia,* questions of contract adhesion or breaches of the NBCWA of 1981.

Plaintiffs' sole request in their Motion For Summary Judgment is that we determine that Defendant is an "employer" pursuant to Pennsylvania's WPCL, and therefore jointly liable with the Debtor for whatever wages and benefits are ultimately found to be due and owing. Defendant's Motion, however, must be addressed first, as he alleges that this Court cannot reach Plaintiffs' issue because the WPCL is preempted by the LMRA, the NLRA, and the Bankruptcy Code.

█ Neither the LMRA, nor the NLRA contains a specific preemption clause within its provisions. Congress, therefore, did not evidence a specific intent to occupy the entire field of labor legislation. *Metropolitan Life Insurance Company v. Massa-*

*chusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Allis-Chalmers Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Metropolitan*, the Supreme Court stated: .

> [W]here the pre-emptive effect of federal enactments is not explicit, "courts sustain a local regulation 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.'" *Allis-Chalmers Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) quoting *Malone v. White Motor Corporation, supra*, 435 U.S. [497] at 504, 98 S.Ct. [1185] at 1190 [55 L.Ed.2d 443].

105 S.Ct. at 2393.

 The particular issue before us is whether the WPCL, specifically the manner in which it defines "employer", is preempted by the LMRA and NLRA. The LMRA states that certain definitional terms used in the NLRA are to be adopted as those of the LMRA as well. The term "employer" is defined in the NLRA and constitutes one of the definitions adopted by the LMRA.

The definitions of "employer" and "employee" in the NLRA, 29 U.S.C. § 152(2) and (3), are carefully worded and quite extensive. Indeed, the determination of "employee" status is so technical that the statute itself creates separate definitional categories for "supervisor" and "professional employees". *See* 29 U.S.C. § 152(11) and (12).

While the particular issue in the case at bar has not been previously decided, the Supreme Court and most of the lower federal courts have had occasion to decide complicated issues concerning the status of parties who arguably fall within these categories. The issues surrounding findings of employer status have primarily involved questions of whether two or more entities constitute a "single employer".

Clearly then, the questions of "employer" and "employee" status are paramount concerns of the federal labor scheme—for if one is found *not* to be an "employer" or "employee", the remainder of the labor statute's provisions may be completely inapplicable.

While there remain some areas of labor law which are not controlled by federal legislation, the determination as to whether parties are under the auspices of said legislation is of regnant concern, and in this particular respect, it appears that Congress *has* chosen to occupy the field to the exclusion of the States.

The WPCL seeks to create its own definition of "employer". Whether that definition is identical to or supplements the federal language is irrelevant.

> [j]udicial concern has necessarily focused on the nature of the activities which the States have sought to regulate, rather than the method of regulation adopted.

*Wisconsin Department of Industry, Labor and Human Relations v. Gould, Inc.*, — U.S. —, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986), quoting *San Diego Building Trades Council v. Garman*, 359 U.S. 236, 243, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959).

Plaintiffs argue that we are bound by the Third Circuit decision in *Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279 (1983). In *Ambrose*, the Court, in a footnote, summarily dismissed the contention that the LMRA preempts Pennsylvania's WPCL. *Id.* at 286, n. 5. Since that decision, the Supreme Court has decided the *Lueck* case, *supra*. The analysis of term interpretation in that case culminated with the Court stating:

> Unless federal law governs that claim, the meaning of the health and disability-benefit provisions of the labor agreement would be subject to varying interpretations, and the congressional goal of a unified federal body of labor contract law would be subverted.

105 S.Ct. at 1916.

Since the Supreme Court rendered this decision, the Third Circuit was again faced with the question of ERISA's preemption

of the Pennsylvania WPCL. *McMahon v. McDowell, supra.* The Third Circuit therein recognized that the *Ambrose* decision dismissed the contention of ERISA preemption in a footnote. 794 F.2d at 108. Moreover, the Third Circuit recognized that the Supreme Court had recently spoken to the issue in the *Metropolitan Life Insurance* case, *supra.* To this end, the Third Circuit stated:

As we have observed, we "may not countenance the continued application in this circuit of a rule, even of our own devising, which is patently inconsistent with the Supreme Court's pronouncements".

794 F.2d at 108 (citations omitted).

As neither the Supreme Court nor the Third Circuit has had the opportunity to review the *Ambrose* footnote as it applies to the LMRA, we are not in a position to determine that *Ambrose* has been overturned on the issue at bar. It should be noted, however, that as we have found the NLRA definition of "employer" to be preemptive, and as the LMRA has legislatively adopted the NLRA definition of "employer" as its own, it would appear that the LMRA should, in this instance, also preempt the WPCL.

In applying the above-quoted language of *Lueck* to the instant case, it is obvious that to allow each state to make its own determination of employer status would be in direct contravention of federal labor law; parties would be unable to negotiate national labor contracts, as a significant factor in negotiations, namely who is liable for payment of wages and benefits, would be subject to state-by-state determinations. This is exactly the type of difficulty Congress intended to eliminate by the creation of the federal labor scheme. *See also, National Metalcrafters, Division of Keystone Consolidated Industries v. McNeil,* 784 F.2d 817 (7th Cir.1986) (holding Illinois' WPCL partially preempted by both the LMRA and NLRA).

We, therefore, find that the NLRA definition of "employer" does preempt the application of the similar definition in the WPCL. However, based on the footnote in the *Ambrose* case, we are precluded from carrying over this preemption to include the LMRA.

■ This foregoing analysis does not touch upon the question of preemption by the Bankruptcy Code. The Code does not contain a general preemption provision; therefore, we must again look to congressional intent to determine whether protection of the Defendant was an anticipated or provided outcome.

The Code was enacted in 1978, after several years of investigation and review of the then-controlling bankruptcy laws. It is axiomatic at this point to state that the policy behind the restructuring of this nation's bankruptcy laws was to create a balance between protecting the rights of creditors and offering the overwhelmed debtor a "fresh start" in life, free of many of his economic burdens. Almost all of the Bankruptcy Code's provisions involve the adjustment of the debtor-creditor relationship; the debtor being the person or entity that has filed a petition for relief under the Code. Defendant is not a debtor within said provisions, and therefore, the Code cannot be generally preemptive as to Defendant.

Only once, in the entire Bankruptcy Code, did Congress in any way create protection for a party which holds the status of "codebtor"—that is 11 U.S.C. § 1301, applicable only in Chapter 13 cases, which states:

**§ 1301. Stay of action against codebtor**

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

This provision evidences a specific intent on the part of Congress to protect parties jointly liable with a Chapter 13 debtor. Significantly, there exists no comparable provision for similarly situated parties under Chapters 7 or 11 of the Bankruptcy Code.

As stated previously, this legislation was several years in the making, and was carefully scrutinized by both the House and the Senate prior to its enactment. It is clear that Congress knew how to provide for codebtor protection if it chose to do so. That provisions similar to § 1301 were not created for the liquidation and business reorganization chapters evidences a decision by Congress to omit such a provision in those cases. Therefore, the Bankruptcy Code cannot be considered preemptive of Pennsylvania's WPCL in this case.

## FINDINGS OF FACT

1. Plaintiff, District 2, United Mine Workers of America ("UMWA"), is an unincorporated association and a labor organization, affiliated with the International Union, UMWA, located in Ebensburg, Pennsylvania.

2. Plaintiff, Local Union 1723, UMWA, is an unincorporated association and a labor organization within District 2 of the UMWA, and represents its members employed by Associated Drilling, Inc. ("Debtor").

3. Defendant, Warren H. Hinks, Jr., has served as President of the Debtor since April 30, 1983; prior to that date, Defendant served as Secretary/Treasurer of the Debtor.

4. The Debtor was a signatory to the National Bituminous Coal Wage Agreement of 1981 ("NBCWA of 1981"); said Agreement became effective on June 7, 1981.

5. The NBCWA of 1981 required the employer to pay certain wages and fringe benefits to the employees.

6. Due to business difficulties, the Debtor, through the Defendant, entered in an agreement with the employees on June 28, 1983, to pay certain wages and benefits, then due, over a period of time.

7. Debtor's contract with its primary customer ended in May of 1983, further hindering the Debtor's financial status.

8. On August 29, 1984, Defendant, as President of the Debtor, notified the employees that the Debtor was unable to meet the payroll due on August 31, 1984; said payroll covering the period of August 3, 1984 to August 17, 1984.

9. The employees responded by striking the Debtor, and have not returned to work.

10. On January 15, 1985, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

11. Plaintiffs filed suit against the Defendant in September of 1985, in the Court of Common Pleas of Cambria County. Defendant petitioned the Court for the joinder of the Debtor as an additional Defendant in December of 1985. Thereafter, the Debtor removed the action to the U.S. District Court for the Western District of Pennsylvania, which referred the case to the Bankruptcy Court.

## CONCLUSIONS OF LAW

1. Congress did not evidence a specific intent to occupy the field of labor law to the exclusion of the States.

2. The determinative factors in deciding whether a federal law preempts a state law are:
 (a) a conflict between the state and federal laws;
 (b) a possible frustration of the federal scheme, or
 (c) an apparent attempt by Congress to occupy the field as discerned from the totality of the circumstances.

3. The National Labor Relations Act ("NLRA") specifically defines the term "employer", evidencing both an importance to the federal labor law scheme and an

attempt by Congress to occupy the field, on this issue, to the exclusion of the States.

4. The Labor Management Relations Act ("LMRA") statutorily adopted the definition of "employer" included in the NLRA

5. The similarity, or lack thereof, between the Pennsylvania Wage Payment and Collection Law ("WPCL") definition of employer, and that of the NLRA and LMRA is irrelevant.

6. The Third Circuit decision in *Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279 (1983), is the law of this Circuit; however, its authority is called into question by the U.S. Supreme Court's decision in *Allis-Chalmers Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). *See also, Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

7. The NLRA preempts Pennsylvania's WPCL, wherein the definition of employer has been fully determined by Congress.

8. While it appears that the LMRA should similarly be held preemptive, we are barred from so determining by the Third Circuit's decision in *Ambrose, supra.*

■ 9. Defendant is not a debtor pursuant to the Bankruptcy Code, and therefore, is not generally protected by its provisions.

10. The Bankruptcy Code provides for codebtor protection only in the scheme of Chapter 13, Individual Repayment Plans. A lack of similar provisions in Chapter 7 liquidations or Chapter 11 reorganizations evidences a lack of intent on the part of Congress to occupy the field to the exclusion of the States.

11. The Bankruptcy Code does not preempt Pennsylvania's WPCL, outside the provisions of Chapter 13 of the Code.

### ORDER OF COURT

AND NOW, to wit at Pittsburgh in said District this 11th day of December, 1986, in accordance with the foregoing Memorandum Opinion, Findings of Fact and Conclusions of Law of this same date, it is OR-

DERED, ADJUDGED and DECREED that Plaintiffs' Motion for Summary Judgment be and is hereby DENIED.

It is FURTHER ORDERED that Defendant's Motion for Summary Judgment be and is hereby GRANTED.