

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-1996

# Antol v. Exposto

Precedential or Non-Precedential:

Docket 95-3714

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Antol v. Exposto" (1996). *1996 Decisions*. Paper 30.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/30

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 95-3714
_____

GARY L. ANTOL; WAYNE S. BAIR; HUBERT BAKER; TERRY BARZANTI;
GREGORY F. BETCHY; HARRY P. CASTEEL; JOHN A. CETTIN;
ARTHUR J.  COLLAND; TEDDY W. CREE; DENNIS J. CUMPSTON; SCOTT E.
CUNNINGHAM; CLYDE J. DAVIS; JOHN DEFRANCESCO; RONALD L. DENNIS;
LOUIS A. DZARA; PAUL S. FARRIER; MARIO FRANCHI; WILLIAM L.
GALLENTINE; ANDREW GARNEK, JR.; BERNARD J. GARNEK; MARVIN H. GARRISON,
JR.; LEONARD GAYDOS, JR.; ABRAHAM M. GEORGE; THOMAS A. GEORGETTI;
ROBERT M. GULLEY; FRED L. GUMP; ED GUTHRIE; SMAUEL E. HALL, JR.;
STEVE HANCHECK; JOHN NELSON HANNA, JR.; DONALD G. HENDERSON;
COLUMBUS J. HENRY; RICK HLATKY; JOHN HOAK; WILLIAM J. HOAK;
WILLIAM J. HOAK; DAVID F. HOLLIS; ANDREW P. HORNICK; FLOYD THOMAS
HORNICK; ROBERT F. HUTCHINSON; WALLY W. JACKSON; EARL C. KETTERING;
WALTER E. KING; JOHN G. KOAST; THOMAS J. KOSS; MACK A. KOVELL;
JOHN J. LESHKO, JR.; RANDY J. LINDICH; RUSSELL K. LOWE; JOSEPH F.
LUCAS; FLOYD MACHESKA; GEROGE J. MARIETTA, SR.; JOHN C. MATTEY, JR.;
LESTER N. MCCUNE; EDWARD D. MACMASTER; CARL JOSEPH METZ; RONADL T.
MILLER; JOE R. MONICA; DONALD P. MOSER; ROBERT W. MYDEN; WILLIAM W.
NIMPFER; JEROME A. NOVAK; LEONARD S. NOVAK; MICHAEL P. OPALENIK;
MARK PHELHAC; PAUL PERUZZI; WAYNE J. PETERSON; JOHN PLISHKA;
RICKIE POLKE; ANDREW G. POPERNACK, JR.; ALBERT J. POPIELARCHECK;
JOHN R.  POPILARCHECK; WILFRED P. POPP; PAUL J. REBAR; DUANE RECKARD;
WAYNE RICHARD; GARY A. ROBINSON; GARY E. SABO; JOHN SEVER, IV; JOSEPH R.
SHIMKO;
MICHAEL SHIMKO; EDWARD ALLEN SHIPLEY; TIMOTHY R. SLEASMAN;
JIMMY D. SMITH; SAMUEL A. SMITHLEY; WILLIAM J. STAJNRAJH;
THOMAS R. STASZEL; ROBERT H. STEADMAN; JOHN P. STEPP; LARRY D.
STEVENSON; RONALD B. STULL, SR.; GARY S. SWAROW; ALBERT C. TENCER;
ROBERT L. THOMAS; BERNARD F. TOGGER; ROBET L. VANCE; GERGE W. VARGO;
DONALD W. WALKO; DALE R. WYLES; STEPHEN YANTKOK, JR.; RICHARD ZELINA

vs.

DOMINIC ESPOSTO; JOSEPH ESPOSTO; ORPHIA ESPOSTO; RICHARD ESPOSTO;
M.W. REED; R.W. REED; R.W. REED, JR.; GARNET CORP.; BON DE, INC.
OF SLOVAN; ATLAS FABCO, INC.

Gary L. Antol, Wayne S. Bair; Hubert Baker; Terry Barzanti;
Gregory F. Betchy; Harry P. Casteel; John A. Cettin; Arthur
J. Colland; Thomas E. Connors*; Teddy W. Cree; Dennis J.
Cumpston; Scott E. Cunningham; Clyde J. Davis; Eugene F.
Davis*; Harold T. Davis*; John DeFrancesco; Ronald L. Dennis;
Louis A. Dzara; Paul S. Farrier; Mario Franchi; Thomas A. Galla*;
William L. Gallentine; Andrew Garnek, Jr.; Bernard J. Garnek;
Dennis Grove*; Marvin H. Garrison, Jr.; Leonard Gaydos, Jr.; Abraham M.
George;
Thomas A. Georgetti; Robert M. Gulley; Fred L. Gump; Ed Gutherie;
Christopher V. Hafenbrack*; Samuel E. Hall, Jr.; Steve Hancheck;

John Nelson Hanna, Jr.; Donald G. Henderson; Columbus J. Henry; Rick Hlatky; John Hoak; William J. Hoak; David F. Hollis; Andrew P. Hornick; Floyd Thomas Hornick; Robert F. Hutchinson; Wally W. Jackson; Earl C. Kettering; Walter E. King; John G. Koast; Thomas J. Koss; Mack A. Kovell; John J. Leshko, Jr.; Randy J. Lindich; Russell K. Lowe; Joseph F. Lucas; Floyd Macheska; George J. Marietta, Sr.; John C. Mattey, Jr.; Lester N. McCune; Edward D. McMaster; Carl Joseph Metz; Ronald T. Miller; Joe R. Monica; Donald P. Moser; Robert W. Myden; William W. Nimpfer Jerome A. Novak; Leonard S. Novak; Michael P. Opalenik; Fred Oravets, Jr.*; Mark Pelehac; Paul Peruzzi; Wayne J. Peterson; John Plishka; Rickie Polke; Andrew G. Popernack, Jr.; Albert J. Popielarcheck; John R. Popielarcheck; Wilfred P. Popp; Paul A. Rebar; Duane Reckard; Wayne Richard; Gary A. Robinson; Gary E. Sabo; John Sever, IV; Bernard P. Shimko Joseph R. Shimko; Michael A. Shimko; Edward Allen Shipley; Timothy R. Slaesman; Jimmy D. Smith; Warren H. Smith; Samuel A. Smitley; William J. Stajnrajh; Thomas R. Staszel; Robert H. Steadman; John P. Stepp; Larry D. Stevenson; Ronald B. Stull, Sr.; Gary S. Swarow; Albert C. Tencer; Robert L. Thomas; Bernard F. Togger; Robert L. Vance; George W. Vargo; Henry A. Verna; Donald W. Walko; Dale R. Wyles; Walter W. White; Stephen Yantko, Jr.; Richard Zelina,

Appellants (*Per Rule 12(a), FRAP)

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D. C. No. 95-cv-00951)

_____

Argued August 6, 1996

Before: MANSMANN, SCIRICA, and WEIS, Circuit Judges

Filed  November 20, 1996

_____

Claudia Davidson, Esquire (ARGUED)
Healey Davidson & Hornack, P.C.
Fifth Floor
Law & Finance Building
Pittsburgh, PA  15219

Attorney for Appellants


Joseph Mack, III, Esquire (ARGUED)
Kurt A. Miller, Esquire
Thorp, Reed & Armstrong
One Riverfront Center

Pittsburgh, PA  15222

John P. Lacher, Esquire
Robert O. Lampl & Associates
960 Penn Avenue
The Convention Tower
Suite 1200 Pittsburgh, PA  15222


Rene D. Quinlan, Esquire
Plowman, Spiegel & Lewis
310 Grant Street
The Grant Building, 2nd Floor
Pittsburgh, PA  15219-2204

Stanley E. Levine, Esquire
Ronald B. Roteman
Campbell & Levine
3100 Grant Building
Pittsburgh, PA  15219

Attorneys for Appellees

————————————

OPINION OF THE COURT
————————————


WEIS, Circuit Judge.

In this suit brought under the Pennsylvania Wage Payment and Collection Law, plaintiffs assert claims against individual corporate officers and shareholders for wages due from the corporate employer.  Because the claims are based on a collective bargaining agreement, we hold that the Wage Collection Law is preempted by the Labor Management Relations Act and the National Labor Relations Act.  Accordingly, we affirm the district court orders granting summary judgment and dismissing the complaint.

Plaintiffs are 111 employees of the Shannopin Coal Company who were laid off on July 24, 1992.  Defendants are seven individuals and three corporations, described variously as major stockholders, owners, operators and agents of the employer.  Shannopin had filed for bankruptcy protection under Chapter 11 on September 31, 1991, but remained in operation until July 24, 1992.  At that time, plaintiffs were owed various sums for wages actually earned while the bankruptcy was proceeding.

In May 1995, plaintiffs filed suit in the Court of Common Pleas of Greene County,

Pennsylvania for the wages due and, as the complaint stated, for "several categories of vacation pay (graduated, regular, floating, and personal days) all of which were wages guaranteed to and earned by the plaintiffs as part of their contract of employment with [Shannopin]."

Plaintiffs based their case on the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. Ann. § 260.2, et seq. (1992), and sought liquidated damages and attorneys' fees, as well as unpaid wages. Attached to their complaint is a schedule of the amounts claimed in the various categories of "wages, regular vacation, graduated vacation, floating and sick/personal."

Defendants removed the case to federal court, asserting that the "contract of employment" referred to in the plaintiffs' complaint was, in fact, a collective bargaining agreement between the United Mine Workers and Shannopin and that, therefore, the case was really an action to enforce the terms of the agreement under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). After removal, defendants filed Answers asserting various defenses, including nonliability under the Wage Act and allegations that Shannopin had continued in operation after the bankruptcy at the insistence of the plaintiffs' union representatives.

The case was assigned to a magistrate judge, who concluded that the plaintiffs' claims required interpreting the collective bargaining agreement, and, as such, were pre-empted by section 301. In addition, the magistrate judge found that plaintiffs had failed to exhaust their contractual remedies under the collective bargaining agreement. He therefore recommended that summary judgment be granted as to those defendants who had filed appropriate motions and that the action be dismissed as to those defendants who had not joined in the motions. He also denied the plaintiffs' motion to remand the action to the state court. The district judge adopted the recommendations and entered appropriate orders without additional comment.

On appeal, plaintiffs contend that their claims are independent of the collective bargaining agreement, that once liability is established under state law, reference to the collective bargaining agreement for calculation of damages does not trigger preemption, and that the district court's ruling discriminated against union employees. Moreover, plaintiffs point out that even if preemption is applicable, removal jurisdiction does not automatically follow.

Defendants counter that the plaintiffs' claims are based on a breach of the collective

bargaining agreement and that a determination of wages and benefits due would require interpreting that agreement.  In their view, federal law preempts the state statute and the federal courts have jurisdiction.

## I.

Section 301(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).

The matter at hand alleges a violation of a contract to which the union and the employer are signatories, but neither is a party to this suit.  Thus, the statutory language does not provide a ready answer.

Although section 301 refers only to jurisdiction, it has been interpreted as authorizing federal courts to fashion a body of common law for the enforcement of collective bargaining agreements.  Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957).  An underlying reason for the development of federal law in this area is the need for uniform interpretation of contract terms to aid both the negotiation and the administration of collective bargaining agreements.  See Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962) (differing interpretations would stimulate and prolong labor disputes).  National policy is particularly important in the enforcement of arbitration provisions, a common element of most collective bargaining agreements.  Lingle v. Norge, Div. Of Magic Chef, Inc., 486 U.S. 399, 410-11 (1984) (federal labor policy fosters uniform, certain adjudications of disputes over the meaning of collective bargaining agreements).

These general principles, however, draw no clear lines of demarcation and, as a consequence, section 301 pre-emption has been a fruitful source of litigation over the years.  Not surprisingly, case law has not been completely consistent, particularly when state law may affect the outcome.  In Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983), the Court observed that, "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor

organization.'  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."

However, not all state law is preempted.  In Lingle, the Court concluded that an employee could enforce a state law banning retaliatory discharge, even though she was covered by a collective bargaining agreement that provided for arbitration for claims of discharge without cause.  Lingle held that courts could resolve matters of state law involving labor-management relations, but only if such matters were outside the "arbitral realm" of collective bargaining agreements.  486 U.S. at 411.  Section 301 preemption "ensures that federal law will be the basis for interpreting collective-bargaining agreements."  Id. at 409.  But that section does not address the substantive benefits a state may provide to workers "when adjudication of those rights does not depend upon the interpretation of such agreements."  Id.

In a footnote, the Lingle Court commented that in some situations, although federal law may govern the interpretation of the collective bargaining agreement to determine proper damages, the underlying state law claim, not otherwise preempted, would prevail.  Hence, resolution of a state law claim could depend upon both the interpretation of the collective bargaining agreement and a separate state law analysis that does not turn on the agreement.  Id. at 413 n.12.

The "independent" nature of the plaintiffs' claim was the deciding factor in Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987).  There, employees sued for breach of contracts that were outside the scope of the collective bargaining agreement.  Thus, construction of that agreement was unnecessary to establish the plaintiffs' case.   Id. at 396.

An example of a dependent state law remedy occurred in International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851 (1987).  There, an employee filed a common law tort suit in state court against her union, charging that it had failed to fulfill its duty of providing safe conditions in the workplace, as it assumed to do in the collective bargaining agreement.  The Supreme Court concluded that the claim was preempted because courts would be required to interpret the collective bargaining agreement to determine if such a duty had been placed on the union and if the agreement defined the nature and scope of that duty.  Id. at 861-62. Hence, "[t]he need for federal uniformity in the interpretation of contract terms . . . mandates that here,

as in Allis-Chalmers, [plaintiff] is precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action."  Id. at 862.

In Allis-Chalmers Corp. v. Lueck , 471 U.S. 202 (1985), an employee brought suit in state court against his employer and the insurer of a health and disability plan established by a collective bargaining agreement.  The complaint alleged bad faith in the handling of the plaintiff's disability claim.  Reversing the state's highest court, the United States Supreme Court held that the claim was preempted.

Emphasizing that the meaning given a contract phrase or term must be subject to uniform federal law, Lueck explained that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law."  471 U.S. at 211.  That rule applies "whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."  Id.  The Court observed:  "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract."  Id.

The Court was especially concerned that if state law were "allowed to determine the meaning intended by the parties in adopting a particular contract phrase or term, all the evils addressed in Lucas Flour would recur," including the uncertainties over "a right to collect benefits under certain circumstances."  Lueck, 202 U.S. at 211.  The Court ultimately decided that because the right asserted derived from the contract, and was defined by the contractual obligation of good faith, any attempt to assess liability inevitably involved contract interpretation.  Even though "the state court may choose to define the tort as `independent' of any contract questions . . . .  Congress has mandated that federal law govern the meaning given contract terms."  Lueck, 471 U.S. at 218-19.

Livadas v. Bradshaw, 512 U.S. 107, 114 S.Ct. 2068 (1994), presented another variation on the problem.  In that case, the Court concluded that federal labor law was not in conflict with a state statute that imposed a monetary penalty for each day that passed between an employee's discharge and receipt of payments for wages due.  The employee had sued to recover a sum equal to the wages for the three days that elapsed between her discharge and her receipt of a check

from the employer. The Supreme Court emphasized that there was no dispute over the amount of the penalty to which the employee was entitled. Thus, "the mere need `to look' to the collective-bargaining agreement for damage computation is no reason to hold the state law claim defeated by § 301." Id. at 2079.

In those circumstances, the Court concluded that the collective bargaining agreement was irrelevant to the dispute between the employer and employee. Nor was there any "indication that the parties to the collective-bargaining agreement understood their arbitration pledge to cover these state-law claims." Livadas, 114 S.Ct. at 2079. Indeed, the collective bargaining agreement provided that a direct wage claim not involving interpretation of the agreement could be submitted to any other tribunal or agency that was authorized and empowered to enforce it. Id. at 2080. The Court also commented that Congress had not intended to present the plaintiff with the "unappetizing choice" between having her state law rights enforced or exercising her right to enter into a collective bargaining agreement with an arbitration clause. Id. at 2075.

From this brief glance at some of the many Supreme Court opinions in this field, certain observations may be drawn. In general, claims based squarely on a collective bargaining agreement or requiring analysis of its terms are preempted by section 301 and are removable to the federal courts. See Lingle, 486 U.S. at 413; Hechler, 481 U.S at 859; Lueck, 471 U.S. at 215;Franchise Tax Bd., 463 U.S. at 23. Claims that are independent of a collective bargaining agreement, even if they are between employees and employers, are not removable. See Livadas, 512 U.S. 107, 114 S.Ct. at 2078-79; Lingle, 486 U.S. at 410; Caterpillar, 482 U.S. at 394-95.

## II.

We now move to the specific issues presented in this case. Logically, the first inquiry must be jurisdiction. Plaintiffs contend that the case was not removable from the state court.

Cautioning that preemption and removal jurisdiction were separate concepts, the Court in Caterpillar concluded that the plaintiffs' suit could not be removed from the state court. The Court emphasized that the "complete preemption" doctrine applies to "claims founded directly on rights created by collective bargaining agreements, and also claims that are `substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, 482 U.S. at 394.

However, the "well-pleaded complaint" rule prevents removal to federal court if a plaintiff chooses to present only a state law claim and preemption is raised solely as a defense. Id. at 398-99. Although preemption may be a valid defense, jurisdiction remains with the state court. Id. at 399.

The complaint here demanded payment for wages based on "contract." This Court has held that the Wage Act "does not create a right to compensation. . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990).

This suit is based "squarely on the terms of the collective bargaining agreement." Wheeler v. Graco Trucking Corp., 985 F.2d 108, 113 (3d Cir. 1993), and the face of the complaint states a federal claim. Section 301 of the Labor Management Relations Act contains civil enforcement provisions within the scope of which the plaintiffs' claim falls. Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir. 1995); Geopel v. National Postal Mail Handlers Union, 36 F.3d 306, 311 (3d Cir. 1994). Although the individual defendants are not signatories to the collective bargaining agreement, they may be parties to a section 301 suit. Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, 647 F.2d 372, 378 (3d Cir. 1981). In addition, as the district court properly found "the plaintiffs' alleged entitlement to compensation and benefits is disputed and cannot be discerned without analyzing the terms of the collective bargaining agreement." Thus, preemption is not raised solely as a defense. In these circumstances, we are persuaded that the case was properly removed to the district court.

                                    III.
As noted earlier, the plaintiffs' suit was brought under the terms of the Pennsylvania Wage Collection Law, which provides that any employee or group of employees may institute actions for wages payable. 43 Pa. Cons. Stat. Ann. § 260.9a(a) (1992). If judgment is entered for the plaintiffs, "the court . . . shall . . . allow costs of reasonable" attorneys' fees. 43 Pa. Cons. Stat. Ann. § 260.9a(f). Section 260.2a defines employer as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth, and any

agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." Plaintiffs seek to hold defendants personally liable as agents or officers.

On several occasions, this Court has reviewed the relationship between this statute and federal labor law. The first time the issue was raised was in Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc., 727 F.2d 279 (3d Cir. 1983). In that case, a pension fund sued for unpaid contributions due a health and welfare plan. The complaint cited both section 301 and the Pennsylvania Wage Law. The defendants were the corporate employer and its two sole officers, who were also the majority stockholders. We determined that the individual officers were not liable under section 301 because there was insufficient evidence to conclude that they were acting as alter egos of the corporation. Id. at 284.

We rejected the district court's conclusion that the word "employer," as used in the Labor Management Relation Act, "has as broad a meaning as the [Wage Law] definition would suggest," and we quoted with approval Combs v. Indyk, 554 F.Supp. 573 (W.D. Pa. 1982). Ambrose, 727 F.2d at 284. In Combs, the district court stated, "it appears that insulation of corporate officers and agents from liability for section 301 violations was, in part, a basis for the parallel insulation of officers and members of local unions from liability for section 301 violations." 554 F.Supp. at 575, citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962) (union members are exempt from personal liability for judgments against the union).

Ambrose did, however, hold the individual officers liable under the Wage Law, even though "imposing liability for unpaid pension benefits on persons who have not contractually agreed to make the payments seems a harsh result." 727 F.2d at 283. In response to the defendants' argument that the Wage Law was preempted by the Labor Management Relations Act and ERISA, the panel said in a brief footnote that "we find these contentions to be without merit." Id. at 282 n.5.

However, in Solomon v. Klein, 770 F.2d 352 (3d Cir. 1985), in an analogous situation, we held that individual corporate officers were not liable under ERISA for delinquent contributions owed by the corporate employer. The majority of courts in other jurisdictions have held likewise. In McMahon v. McDowell, 794 F.2d 100 (3d Cir. 1986), we held that

Ambrose's statement that the Wage Law was not preempted by ERISA was no longer valid in light of the Supreme Court's decisions in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985) and Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983).

The Court of Appeals for the Seventh Circuit in National Metalcrafters v. McNeil, 784 F.2d 817, 825 (7th Cir. 1986), commenting on the Ambrose footnote, said, "the particulars of the contentions and the grounds of the court's action are inscrutable" and noted further that Lueckhad placed the case "under a shadow." The McNeil Court concluded that the Illinois Wage Payment and Collection Act was preempted by section 301. "The only basis of the state-law claim in this case is that the company broke its contract to grant vacation pay of a certain amount. No state law required that any vacation pay be given or fixed the rate of such pay if given." Id. at 824. Consequently, the claim required interpreting the collective bargaining agreement.

We had occasion to revisit the Ambrose footnote in Wheeler. There, a former employee sued his corporate employer and an officer of the company for wages alleged to be due. The action was based on both the Labor Management Relations Act and the Pennsylvania Wage Law. We held that the section 301 suit was barred because the plaintiff had failed to exhaust the arbitration requirements in the collective bargaining agreement. We also held that the Wage Law claim was preempted because its basis was the collective bargaining agreement and, therefore, was "governed exclusively by federal law." Wheeler, 985 F.2d at 113.

In a footnote, Wheeler explained that "we think the statement in the Ambrose footnote is best understood to mean that the [Wage Law's] definition of an employer was, as our prior opinion put it, `subsumed within the federal common law.'" Id. at 113-14 n.2. (In the first Ambrose opinion, 665 F.2d 466, 470 (3d Cir. 1981), the panel had remanded to the district court to determine if the Wage Law was "subsumed within the federal common law."). However, as we have observed here, in the second Ambrose opinion, the panel decided that the Labor Management Relations definition of "employer" was not as broad as that in the Wage Law. It would seem that despite Wheeler's efforts, the Ambrose footnote remains inscrutable. In any event, we believe that Wheeler's holding of preemption is more in keeping with the Supreme Court's subsequent opinion in Lueck, which undermined the Ambrose footnote.

District court opinions within Pennsylvania have differed in their approach to preemption in the Wage Law situation.  Compare Lawrence v. Regal, 851 F. Supp. 202, 204 (W.D. Pa. 1993), aff'd 19 F.3d 643 (table) (3d Cir. 1994) (section 301 preempts claim against corporate officers under the Wage Law), with Tener v. Hoag, 697 F. Supp. 196, 197 (W.D. Pa. 1988) (Ambrose imposes personal liability on corporate officers (ERISA claim)), Central Pa. Teamsters Pension Fund v. Burten, 634 F. Supp. 128, 131 (E.D. Pa. 1986) (non-resident officers not subject to personal jurisdiction under Wage Law) and Amalgamated Cotton Garment & Allied Indus. Fund. v. J.B.C. Co. of Madera, Inc., 608 F. Supp. 158, 166 (W.D. Pa. 1984) (personal liability imposed on corporate officers because of Ambrose footnote).  See also In re Futura Indus. Inc., 69 B.R. 831, 836 (E.D.Pa. 1987) (Ambrose approved personal liability of corporate officers under the Wage Law); In re District 2, United Mine Workers, 67 B.R. 883, 887 (W.D.Pa. 1986) (National Labor Relations Act preempts Wage Law, but Labor Management Relations Act's lack of preemption controlled by Ambrose footnote).

                                IV.

The plaintiffs' suit is against individual officers and stockholders of the corporation. Under the Wage Law, officers become the "employer" and are personally liable for obligations of the corporate employer.  That definition created by state law, if applied to the Labor Management Relations Act, would substantially alter the scope and enforcement of the typical collective bargaining agreement.

The extent of the conflict between the two statutes is apparent under the most accommodating construction of the Wage Law with federal law, that is, that a signatory corporate employer is not deprived of its rights under a collective bargaining agreement, but its officers would be individually liable.  Under this scenario, a corporation would be entitled to invoke the exclusive arbitration provisions of the agreement.  That possibility was not explored in Ambrose because the corporation did not appeal an adverse decision in the district court.

However, Wheeler held that the Wage Law was preempted by the Labor Management Relations Act.  Hence, the corporate employer's right to arbitration provided by the collective bargaining agreement remained in effect.  Although holding in favor of an officer in his

individual capacity, Wheeler did not discuss in any detail its reasons for that decision.  On
reflection however, it is clear that the holding was correct.

If the Wage Law were construed to expand the definition of employer in collective
bargaining agreements to include corporate officers, a number of adverse effects on federal labor
law would follow.  In addition to removing the long-standing insulation of officers from personal
liability for corporate debts, see Solomon, 770 F.2d at 354, application of the Wage Law
definition would allow wage claimants to sue corporate officers in state court.  Thus, employees
could bypass the grievance procedures established by a collective bargaining agreement, as well
as the federal time limits for enforcing section 301.  "A contrary rule which would permit an
individual employee to completely sidestep available grievance procedures in favor of a lawsuit
has little to commend it."  Republic Steel Corp. v. Maddox, 379 U.S. 650, 655 (1965).

Moreover, the application of a collective bargaining agreement covering the activities of a
corporation doing business in a number of states would be subject to the vagaries of state law.
For example, although an employee in Pennsylvania covered by a collective bargaining
agreement would be free to bypass the arbitration provisions by suing the officers or corporation
under the Wage Law, another employee in a different state, working under the very same
collective bargaining agreement would be limited to the arbitration process.  This is not the
uniform enforcement contemplated by federal labor law.  In effect, permitting use of the Wage
Law in disputes where collective bargaining agreements are in force, undermines the uniformity
of federal labor law in a critical area -- enforcing wage agreements, a mandatory subject for
collective bargaining.

As noted earlier, Lueck emphasized the need to protect and enforce the provisions of
collective bargaining agreements where the parties had agreed that a neutral arbitrator would be
responsible, in the first instance, for interpreting the meaning of the contract.  Unless preemption
is given effect, the "federal right to decide who is to resolve contract disputes will be lost."
Lueck, 202 U.S. at 219.  If that occurs, "claims involving vacation or overtime pay, work
assignments, unfair discharge -- in short, the whole range of disputes traditionally resolved
through arbitration -- could be brought in the first instance by a complaint in tort rather than in

contract."  Id. at 219-20.

Nor do we accept the plaintiffs' argument that Livadas requires a different result here. There, the statutory penalty was fixed by the wages agreed to have been due on the date of discharge, multiplied by the number of days before payment.  There was no need to refer to the collective bargaining agreement to calculate the penalty and no one asserted that there was an interference with the arbitral process.  Livadas did not present the situation found in the case at hand where an employee could bypass arbitration by resorting to the statute.  Moreover, the employer here insists that there are uncertainties about eligibility for the types of vacation pay, as well as the correct amounts due in those instances.  Such matters, Lueck observed, are proper grist for the arbitration mill.  In addition, unlike the Wage Law, the statute in Livadas did not impose individual liability on the employer's officers and agents.

Plaintiffs also contend that preemption of the Wage Law amounts to discrimination against those covered by collective bargaining agreements because other employees can pursue claims under the state statute.  See Livadas, 114 S. Ct. at 2075; Metropolitan Life, 471 U.S. at 756 (Wagner Act did not seek to penalize workers for joining unions).  Although that argument has some surface appeal, it fails to acknowledge the existence of compensating factors when federal law governs employment.  See Rebecca Hanner White, Section 301's Preemption of State Law Claims:  A Model for Analysis, 41 Ala. L. Rev. 377, 392 (1990).

Collective bargaining agreements frequently contain provisions for favorable working conditions.  A key benefit union status often confers on workers is the presence of a "just cause" standard for discharge or discipline.  Even more important, the grievance and arbitration process, a standard feature of almost all collective bargaining agreements, offers union members a means for quick and inexpensive resolution of contract disputes.  Permitting employees to sue in state courts in order to bypass arbitration not only dilutes its effectiveness, but calls into question its very existence.  Non-exclusivity of arbitration "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." Republic Steel, 379 U.S. at 653, quoting Lucas Flour Co., 369 U.S. at 103.

Federal  law rests on the premise that limitation of certain rights afforded by the states is justified by having a uniform labor policy.  We are persuaded that procedures for resolving

claims for wages, vacation and benefits fall within the category of matters where national policy controls.

We conclude, therefore, that the Pennsylvania Wage Law is preempted by the Labor Management Relations Act and the National Labor Relations Act. The judgment of the district court will be affirmed.

Antol v. Esposto, No. 95-3714
MANSMANN, J., dissenting.

This case presents the difficult and close question of whether section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), preempts the employees' action against the owners of the company for unpaid wages, liquidated damages and attorneys fees, which is permitted under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. Ann. § 260.2, et seq. (1992). We gleaned from the complaint that the former employees of Shannopin Mining Company sued the owners and operators, as well as the major shareholders, of the company because the company is in bankruptcy and has failed to pay them what is due and owing. Because I believe that the employees' WPCL claims are not preempted, I respectfully dissent from the majority's opinion. The Supreme Court's decision in Livadas v. Bradshaw, 512 U.S. 107, 114 S. Ct. 2068 (1994), guides my decision.

In Livadas, the Supreme Court held that an employee's action based upon a state law right to receive a penalty payment from her employer was not preempted under the LMRA even though the penalty was tacked to her wages, which were governed by a collective bargaining agreement. At issue in Livadas was a California law which required employers to pay all wages due immediately upon an employee's discharge, Labor Code § 201; imposed a penalty for refusal to pay promptly, section 203; and placed responsibility for enforcing these provisions on the Commissioner of Labor. After Karen Livadas' employer refused to pay her the wages owed upon her discharge, but paid them a few days later, Livadas filed a penalty claim pursuant to California Labor Code § 203. The Commissioner of Labor responded to Livadas' request with a form letter construing another provision of the California Labor Code, Labor Code § 229, as barring him from enforcing Livadas' claim because her terms and conditions of employment were governed

by a collective bargaining agreement containing an arbitration cause. The provisions of Labor Code § 229 expressly precluded the Commissioner from adjudicating any dispute concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause. After the Commissioner refused to enforce Livadas' claim, Livadas commenced an action pursuant to 42 U.S.C. § 1983 alleging that the Commissioner's non-enforcement policy was preempted by federal law because it abridged her rights under section 7 of the National Labor Relations Act, 49 Stat. 452, as amended, 29 U.S.C. § 157. The Commissioner argued that his non-enforcement policy (and Labor Code § 229) was required by federal law, namely section 301 of the LMRA, which has been read to preempt state-court resolution of disputes turning on the rights of parties under collective bargaining agreements.

Justice Souter, writing for a unanimous court, disagreed. Presented with the opportunity to preempt California Labor Code provisions granting protections to terminated employees and providing penalties against employers for violation of those protections, the Court instead held preempted the California Labor Commissioner's policy of refusing to enforce those provisions when the terminated employees were covered by a collective bargaining agreement containing an arbitration clause.

Relying upon its prior decisions in Allis-Chalmers v. Lueck, 471 U.S. 200 (1985), and Lingle v. Norge, Division of Magic Chef, Inc., 486 U.S. 399 (1988), the Court held that section 301 could not be read broadly to preempt non-negotiable rights conferred upon individual employees as a matter of state law and stressed that it is the legal character of the claim as "independent" of rights under the collective bargaining agreement that decides whether a state cause of action may go forward. The Court reiterated that "[w]hen the meaning of contract terms is not the subject of the dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas, 512 U.S. at ___, 114 S.Ct. at 2077, citing Lingle, 486 U.S. at 413, n.12 ("A collective bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.").

Accordingly, the Supreme Court concluded that these principles foreclosed even a colorable argument that Livadas' claim under section 203 of the California Labor Code was preempted. The Court observed that beyond the simple need to refer to bargained for wages rates in computing the penalty, the collective bargaining agreement was irrelevant to the dispute between Livadas and her employer. The Supreme Court distinguished Livadas' situation from the situation in Plumbing, Heating and Piping Employers Council of Northern California v. Howard, 53 Cal. App.3d 828, 836 (1975), where an employee sought to have paid an unpaid wage claim based upon his interpretation that his collective bargaining agreement entitled him to a higher wage. The employee there asserted that under the collective bargaining agreement, he was entitled to receive a foreman's rate of pay and not a journeyman's. The Supreme Court observed, "that sort of claim, however, derives its existence from the collective bargaining agreement, and accordingly, falls within any customary understanding of arbitral jurisdiction." Livadas, 512 U.S. at ___ n.6 and 512 U.S. at ___, 114 S.Ct. at 2078-79 n.20.

Interestingly, the Court in Livadas acknowledged that "Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in Lingle and Lueck," but found that Livadas, "in which nonpre-emption under § 301 is clear beyond preadventure" was "not a fit occasion . . . to resolve disagreements that have arisen over the scope of our earlier decisions." Livadas, 512 U.S. at ___ n.18, 114 S. Ct. at 2078 n.18.

Livadas is dispositive here. In this case, the employees seek wages allegedly due them for the two weeks they worked prior to their lay-offs as well as vacation pay. Recovery of these wages is expressly provided for by Pennsylvania's Wage Payment and Collection Law which is virtually identical to the California law involved in Livadas. Both state laws grant a right of compensation for earned wages, including vacation pay. Under the WPCL:

Any employee or group of employees, labor organization or party to whom any type of wages is payable may institute actions provided under this Act.

43 P.A. § 260.9a(a), Adam v. Benjamin, 627 A.2d 1186, 1191 (Pa. Super. 1993), alloc. denied, 642 A.2d 482 (Pa. 1994), cert. denied, 115 S. Ct. 92 (1994). "The right to recover wages `earned'

by the plaintiffs'/employees upon separation from employment is a statutory remedy which supplements (rather than supplants) a common law cause of action for breach of contract."
Adam v. Benjamin, 627 A.2d at 1198. This Pennsylvania right is nonnegotiable and applies to unionized and nonunionized employees alike.

The majority attempts to distinguish Livadas' case from this case because the Supreme Court in Livadas found that there was no dispute between Livadas and her employer over the amount of the penalty to which Livadas was entitled. I do not believe, however, that federal preemption can turn on whether or not an employer chooses to dispute the amount of wages an employee is entitled, under state law, to receive. Thus, I cannot accept the majority's distinction. To do so would mean that an employer could utilize section 301 preemption to avoid liability by raising a dispute concerning the amount of wages owed in any given case.

Moreover, in this case, although the owner/operators of the mine contend that the employees' alleged entitlement to compensation and benefits is in dispute and cannot be discerned without interpretation of their collective bargaining agreement, they have failed to convince me that specific provisions of the collective bargaining agreement are actually implicated here. In order to determine whether a party's state law claim is preempted per section 301, we look to see whether the resolution of the claim depends on the meaning, or requires the interpretation, of a collective bargaining agreement. Lingle, 486 U.S. at 405-406. Here, in order to determine the amount of wages owed the former employees of Shannopin Mining Company, a court need only consult the appendix of the National Bituminous Coal Wage Agreement, NBCWA, at the conclusion of the collective bargaining agreement, which sets forth the remuneration that employees are to receive on a daily and hourly basis by job classification. After consulting the appendix, the calculation of any amount of unpaid wages will be based upon a calendar, as well as the employer's records, showing the amount of time that individual employees have worked. Since the resolution of these employees' claims for unpaid wages does not depend upon the meaning, or require the interpretation, of a collective bargaining agreement, their claims should not be preempted here.

One final comment about federal labor policy. It is important to note that the employees

involved in this case could not receive their duly earned wages from the company through the
arbitration process because the company was in bankruptcy after July 24, 1992, the last day the
employees performed work.  Thus, I am not concerned that allowing employees to assert their
state right to be paid for their earned wages would interfere with the arbitration process in the
normal case, or would encourage employees to sidestep available grievance procedures in favor
of lawsuits.  Consequently, a uniform labor policy in favor of arbitration will not be disturbed by
this Pennsylvania procedure which permits the unfortunate employee of a bankrupt company to
seek recourse against parties not covered by the collective bargaining agreement through an
additional means of redress in these unusual circumstances.