Ralph T. LEONARD, Russell K. Myers, Paul E. Enzman, John R. Klaas, Michael E. Hogan, Ivan Roth, John R. Towner, Ronald Coffin, Alvin G. Larch, Paul R. Bishop, Ervin Rhoades, Henry Allen Prichard, Ralph Nelson, Darrell O. Porter, Larry Jacks, Leann Sandoval, Jennifer Clair, Merle W. Kiesel, Ryan Tarone, Cynthia Garcia, Yvonne Carsten, Rene Easter, Darlene Nicholas, Larry L Weickum, Anthony A. Sanchez, Todd Gardner, Dennis Craig, Clifford Elrod, Virgil Eggleston, James Goerig, Doug Hanevik, Donald Kneebone, Greg Cole, Tony Kmoch, Frank Hill, Michael Luxner, Creed Huff, Terry Harvey, Robert Wagenknecht, Steven G. Larghe, Richard Echtenkamp, Melvin G. Teter, Tyler U. Iungerich, Ronald F. Cooley, David Capshaw, Charles Bleakley, Larry Jones, Ted Schwartz, and Evan Howard, Plaintiffs,

v.

Jerry D. MCMORRIS, Harold R. Roth, George R. Roberge, James R. Feehan, Mike Hampton, Lester Smith, Neal Barkley, Robert Cline, Cal Wolfe, and Terry Jensen, Defendants.

No. Civ.A. 99N1306.

United States District Court, D. Colorado.

June 29, 2000.

1100

Evan S. Lipstein, Michael Bruce Levy, Lipstein & Mortimer PC, Lakewood, CO, John David Beckman, The Beckman Law Office, P.C., Golden, CO, for plaintiffs.

James E. Scarboro, Timothy R. Macdonald, Arnold & Porter, Denver, CO, Robert Dyer, Kip Shuman, Denver, CO, for defendants.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is a labor dispute. Plaintiffs Ralph T. Leonard *et al.*, (collectively, "plaintiffs") claim that Defendants Jerry D. McMorris *et al.* (collectively, "defendants") are liable for plaintiffs' unpaid wages pursuant to the Colorado Wage Claim Act, Colo.Rev.Stat. §§ 8-4-101 to 127 (1999) [hereinafter "Wage Act"]. This matter is before the court on: (1) "Defendants' Motion for Summary Judgment" filed October 25, 1999; and (2) "Plaintiffs' Motion for Summary Judgment" filed January 13, 2000. Jurisdiction is based on 28 U.S.C.A. § 1334(b).

## FACTS

Defendants Jerry D. McMorris, Harold R. Roth, George R. Roberge, James R. Feehan, Neal Barkley, Robert Cline, Cal Wolfe, and Terry Jensen are corporate officers of NationsWay Transport Service, Inc. ("NationsWay").[1] (Defs.' Br. in Supp. of Defs.' Mot. for Summ.J., Statement of Undisputed Material Facts ¶ 2 [filed Oct. 25, 1999] [hereinafter "Defs.' Br."]; *admitted at* Pls.' Br. in Opp'n to Defs.' Mot. for Summ.J., Resp. to Statement of Undisputed Material Facts ¶ 2 [filed Dec. 7, 1999] [hereinafter "Pls.' Resp."].) NationsWay was one of the largest privately held trucking companies in the United States. (*Id.,* Statement of Undisputed Material Facts ¶ 1; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.)

As of May 1999, NationsWay had more than 3200 employees in forty-three different States. (*Id.,* Statement of Undisputed Material Facts ¶ 5; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.) Of these employees, more than 2000 were members of eighty-nine different local unions that have 144 different collective bargaining agreements (hereinafter, "CBA" or "CBAs") with NationsWay. (*Id.,* Statement of Undisputed Material Facts ¶ 6; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.) The eighty-nine local unions are affiliated with the Intentional Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters"), which has its own nationwide CBA with NationsWay entitled the National Master Freight Agreement ("National Master CBA"). (*Id.,* Statement of Undisputed Material Facts ¶ 7; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.) In addition, each of the eighty-nine local unions has entered one or more supplemental agreements with NationsWay modifying the Na-

tional Master CBA. (*Id.,* Statement of Undisputed Material Facts ¶ 8; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.) In this case, those of the named plaintiffs who are union members are subject to the Western States Area Supplement Agreements ("Western States CBA"). (*Id.,* Statement of Undisputed Material Facts ¶ 9; *admitted in pertinent part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)

On February 11, 1999, the NationsWay board of directors executed a resolution authorizing Roth and William Ward, a NationsWay senior vice president, to execute a petition under Chapter 11 of the United States Bankruptcy Code. (Pls.' Resp., Statement of Additional Undisputed Material Facts ¶ 1; *admitted at* Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ.J., Resp. Concerning Pl.'s Additional Undisputed Material Facts ¶ 1 [filed Dec. 27, 1999] [hereinafter "Defs.' Reply"].) On May 20, 1999, NationsWay filed a petition for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona. (Defs.' Br., Statement of Undisputed Material Facts ¶ 3; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.) Later that day, NationsWay terminated the employment of most of its employees, including the plaintiffs herein. (*Id.,* Statement of Undisputed Material Facts ¶ 4; *admitted at* Pls.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.)

On June 7, 1999, plaintiffs filed their complaint in Denver County District Court. (Notice of Removal, Ex. A [Compl. (filed in Denver County District Court June 7, 1999) ] [filed July 9, 1999].) On July 9, 1999, defendants removed the action to this court. (*Id.*) On August 11, 1999, plaintiffs filed an amended complaint.

---

**1.** The parties dispute whether Defendants Mike Hampton and Lester Smith were NationsWay officers on May 20, 1999. (Am. Compl. ¶ 2 [filed Aug. 11, 1999]; *denied at*

First Am. Answer ¶ 2 [filed Aug. 19, 1999].) For purposes of clarity herein, I shall refer to all of the defendants collectively as "defendants" unless otherwise specified.

(Am.Compl. [filed Aug. 11, 1999].) In the amended complaint, plaintiffs allege that defendants were liable for those wages which plaintiffs had earned at the time that their employment terminated but were unpaid, pursuant to the Wage Act.[2] (*Id.* ¶¶ 13–20.) On October 12, 1999, defendants filed their motion for summary judgment. (Defs.' Mot. for Summ.J. [filed Oct. 12, 1999].) Defendants claim that they are entitled to summary judgment because the Wage Act does not impose personal liability on individual corporate officers and, even if it does, there can be no personal liability if the corporation is not subject to liability by operation of the Bankruptcy Code. (Defs.' Br. at 5–20.) Defendants further argue that, even if the Wage Act imposes liability upon them individually, the Wage Act is preempted (1) by the Bankruptcy Code, and (2) by the Labor Management Relations Act, 29 U.S.C.A. § 185(a) [hereinafter "LMRA"], for those of the plaintiffs who are subject to NationsWay's collective bargaining agreements with the Teamsters. (*Id.* at 21–34.) On January 13, 2000, plaintiffs filed a cross-motion for partial summary judgment as to defendants' liability only. (Pl.'s Mot. for Summ.J. [filed Jan. 13, 2000] [hereinafter "Pls.' Br."].) Plaintiffs contend that they are entitled to summary judgment as to defendants' liability under the Wage Act because: (1) the Wage Act imposes personal liability for earned but unpaid wages upon corporate officers; (2) plaintiffs' claims are not preempted by the Bankruptcy Code; (3) the LMRA does not preempt the Wage Act claims of those plaintiffs who are subject to a collective bargaining agreement; and (4) none of the other miscellaneous affirmative defenses which defendants assert bar plaintiffs' first claim. (*Id.*)

## ANALYSIS

### 1. Legal Standard for Summary Judgment

Under rule 56(c), the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 [10th Cir.1990]).

---

**2.** In addition, Plaintiffs Ralph T. Leonard and John R. Klaas asserted claims against McMorris and Roth under Colorado's short check statute, Colo.Rev.Stat. § 13–21–109 (1999). (Am.Compl. ¶¶ 21–28.) On January 21, 2000, Magistrate Judge Pringle entered the Prelimi-

nary Pretrial Order, which indicated Leonard and Klaas had withdrawn the second claim. (Prelim. Pretrial Order [filed Jan. 21, 2000].) Accordingly, Leonard and Klaas' claims pursuant to Colorado's short check statute is hereby dismissed.

### 2. Colorado Wage Act

Plaintiffs contend that defendants violated the Wage Act by failing to pay wages which plaintiffs had earned prior to the termination of their employment, and they seek to hold the defendants personally liable for those wages. (Am.Compl.) Defendants contend that they are not personally liable for plaintiffs' earned but unpaid wages for several reasons. First, defendants contend that the plain language of the Wage Act itself does not permit the imposition of personal liability on corporate officers for wages which the corporation has failed to pay. (Defs.' Br. at 6–11.) Second, defendants contend that, even if the Wage Act can be read to create personal liability on corporate officers for earned but unpaid wages, such liability would not attach when the corporation itself is precluded from paying the wages by operation of the Bankruptcy Code. (Id. at 10–23.) Finally, defendants contend that the LMRA preempts the Wage Act claims of those of the plaintiffs who are subject to a collective bargaining agreement. (Id. at 24–34.) I address each argument separately.

### a. Personal Liability for Corporate Officers Under the Wage Act

 Colorado's Wage Act is "a comprehensive wage code designed to require employers to make timely payments of wages earned by an employee and to provide adequate judicial relief when employers fail to pay wages when due." *Cusimano v. Metro Auto, Inc.*, 860 P.2d 532, 533 (Colo.Ct.App.1992) (citing *Lee v. Great Empire Broad., Inc.*, 794 P.2d 1032 [Colo. Ct.App.1989]). Under section 8–4–104(1), "[w]hen an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned and unpaid at the time of such discharge is due and payable immediately...." Colo.Rev.Stat. § 8–4–104(1). Under the Wage Act, "employer" means "every person, firm, partnership, association, corporation, migrato-

ry field labor contractor or crew leader, receiver, or other officer of court in Colorado, and any agent or officer thereof, of the above mentioned classes, employing any person in Colorado." The Wage Act also imposes a penalty on an employer who refuses without good faith legal justification to pay wages due under section 8–4–104(1), and provides that an employee who recovers wages alone or wages plus a penalty is entitled to an award of attorney fees. *Id.* §§ 8–4–104(3), 8–4–114. Specifically, a penalty may be collected

> If an employer refuses to pay wages or compensation in accordance with subsection (1) of this section upon request by the employee and without a good faith legal justification for such refusal, the employer is liable to the employee, in addition to the compensation legally proven to be due, as a penalty for such refusal the greater of an amount equal to fifty percent thereof or an amount equal to the amount of wages payable per day to such employee not to exceed ten days.

Colo.Rev.Stat. § 8–4–104(3).

 The Wage Act applies only to compensation that the employee earned under the employment agreement existing between the parties. *Id.* § 8–4–101(9); *Barnes v. Van Schaack Mortgage*, 787 P.2d 207, 209 (Colo.Ct.App.1990). It does not apply to compensation not fully earned under the parties' employment agreement. *Id.* § 8–4–104(2). Nor does the Wage Act by itself create any substantive right to compensation for labor and services performed. *Barnes*, 787 P.2d at 209. Instead, an "employee's substantive right to compensation and the conditions that must be satisfied to earn such compensation remain matters for negotiation and bargaining, and are determined by the parties' employment agreement, rather than by the statute." *Id.* at 210. Under the Wage Act, compensation is earned if it is both vested and determinable pursuant to an employment agreement at the time of the employee's termination. *Rohr v. Ted*

*Neiters Motor Co.*, 758 P.2d 186, 188 (Colo. Ct.App.1988.)

■■■ The Colorado Supreme Court has not had occasion to address the issue of whether corporate officers can be held personally liable for unpaid corporate wages under the Wage Act, but has indicated that Wage Act is "at least susceptible" to the interpretation that corporate officers and/or agents are personally liable for earned but unpaid wages payable to terminated employees. *Fischer v. District Court*, 193 Colo. 24, 561 P.2d 1266 (1977). Two published cases from separate panels of the Colorado Court of Appeals appear, at least at first blush, to have reached opposite conclusions on the issue. *Compare Cusimano*, 860 P.2d at 534 (concluding that the Wage Act imposes personal liability for wages on corporate officers);[3] *with Koontz v. Rosener*, 787 P.2d 192, 196–97 (Colo.Ct.App.1989) (affirming district court's dismissal of Wage Act claims against corporation's principal shareholder as asserted against wrong party).[4] As a general matter, the decisions of intermediate state appellate courts are "persuasive" of how the state's highest court would rule. *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 n. 1 (10th Cir.1995) (quoting *Perlmutter v. United States Gypsum Co.*, 4 F.3d 864, 869 n. 2 [10th Cir.1993]). I am not required to follow the dictates of an intermediate state appellate court, although I may view the court's decision in *Cusimano* as persuasive as to how Colorado's Supreme Court might rule. *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir.1996). Thus, I turn to the language of the Wage Act in an effort to ascertain how the Colorado Supreme Court would construe the provisions of the statute.

■■■ In construing statutory provisions, the court's obligation is to give full effect to the legislative intent. *Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298 (Colo.1996). When the meaning of a statute is clear from its face, resort to rules of

3. In *Cusimano*, a panel of the Colorado Court of Appeals held that corporate officers are personally liable under the Wage Act for a corporation's unpaid wages, statutory penalties, and attorney fees to the same extent as the corporate employer. *Cusimano*, 860 P.2d at 533–34. The court held that the definition of "employer" in section 8–4–101(6) as including "any agent or officer" "clearly discloses an intent to impose personal liability for wages on corporate officers. It contains no express requirements for liability beyond status as an officer." *Id.* (citing Colo.Rev. Stat. § 8–4–101[6]). In addition, the court specifically rejected the defendants' argument that corporate officers could be held liable for wages under the Wage Act only upon proof that they had some duty in relation to the unpaid employees, concluding that had the Colorado legislature intended such a limitation, it could have so drafted the statute. *Id.* Finally, the panel reasoned that such an interpretation of the Wage Act furthered the statutory purpose of assuring timely payment of wages and providing adequate relief when such wages are not paid. *Id.*

4. In *Koontz*, the real-estate broker plaintiffs sued an individual corporate officer, but not the corporation itself, under the Wage Act, claiming entitlement to payment of listing commissions on properties which the plaintiffs had listed for the non-party corporate defendant prior to their termination and which had thereafter resulted in sales. *Koontz*, 787 P.2d at 196. The trial court dismissed the plaintiffs' claims because the plaintiffs had failed to join the corporate employer as a defendant, and this panel of the Colorado Court of Appeals affirmed this holding. *Id.* at 196–97. On appeal, the plaintiffs relied on Colo.Rev.Stat. § 12–61–103(8), which provides that the designated director-broker for a corporate real-estate brokerage firm may be held personally liable for a claim of breach of fiduciary duty made against the corporate firm. *Id.* at 196. The panel reasoned that because the plaintiffs' claims against the defendant were not based on any allegation that the corporate employer had breached a fiduciary duty running to the plaintiffs, but, rather, were claims for unpaid compensation, "the wage claim should have been asserted against the corporate firm." *Id.* (citations omitted). Accordingly, the panel affirmed the dismissal of the plaintiffs' Wage Act claims against the defendant. It does not appear that the parties in *Koontz* raised the argument that the defendant, as a corporate officer, met the Wage Act's definition of "employer," and this panel of the court, in any event, did not address this issue in the opinion.

statutory construction or legislative intent is unnecessary. *Colorado Property Acquisitions, Inc. v. United States*, 894 F.2d 1173, 1174 (10th Cir.1990). If the statutory language is ambiguous, however, the court looks to principles of statutory construction to ascertain legislative intent. *Gorman v. Tucker*, 961 P.2d 1126 (Colo. 1998). In interpreting a comprehensive legislative scheme, the court must give meaning to all of its parts and construe the statutory provisions to further the legislative intent. *Huddleston v. Grand County Bd. of Equalization*, 913 P.2d 15 (Colo. 1996). Thus, a statute must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all of its parts. *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66 (Colo. 1995).

As noted above, the Wage Act provides that an "employer" is liable for wages which are earned but unpaid at the time that of the employee's discharge when that discharge is at the employer's volition. Colo.Rev.Stat. § 8–4–104(1). Section 8–4–101(6) defines the term "employer" to mean *"every person, firm, partnership, association, corporation, . . ., and any agent or officer thereof*, of the above mentioned classes, employing any person in Colorado. . . ." *Id.* § 8–4–101(6) (emphasis supplied). For purposes of clarity herein, I shall distinguish between the employees' conventional employer—the individual or entity which employs and pays employees for their services in the conventional sense—and statutory employers—individuals or entities who are "employers" only by operation of the Wage Act. Under the facts of this case, NationsWay was plaintiffs' employer in the conventional sense; that is, it was the employer who actually paid wages and benefits to plaintiffs until May 20, 1999. The question therefore is whether defendants here are statutory employers. In other words, the issue is whether defendants meet the statutory definition of "employer" under the Wage Act, even though they may not have been plaintiffs' employers in the conventional sense.

Defendants contend that they are not statutory employers under the Wage Act. Defendants argue that the Wage Act's definition of "employer" as including "any agent or officer" merely enumerates all of the entities potentially subject to the provisions of the Wage Act, but does not impose any liability. According to defendants, the Wage Act does not create any personal liability for corporate officers for the unpaid wages of the corporate employer because it "defies logic" to suggest that the legislature intended to eliminate the corporate veil and subject corporate officers to such liability. (Defs.' Br. at 7.) I am unpersuaded.

The plain language of the Wage Act defeats defendants' argument. The Wage Act's definition of employer clearly and unequivocally evinces the Colorado legislature's intention to impose personal liability for earned but unpaid wages upon corporate officers if they otherwise meet the definition of employer. *Accord Cusimano*, 860 P.2d at 534; *see also Carpenters' Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 283 (3d Cir.1983) (construing identical definition of "employer" in Pennsylvania's Wage Payment and Collection Law, Pa.Stat.Ann. tit. 43, § 260.1 et seq. [hereinafter "WPCL"], to include individual corporate officers), *overruled on other grounds, McMahon v. McDowell*, 794 F.2d 100 (3d Cir.1986); *Central Pa. Teamsters Pension Fund v. Burten*, 634 F.Supp. 128, 131 (E.D.Pa.1986) (noting that "all courts which have considered the issue agree that the legislature intended to hold policymaking officers personally liable for unpaid wages" under WPCL); *Amalgamated Cotton Garment & Allied Indus. Fund. v. Dion*, 341 Pa.Super. 12, 491 A.2d 123, 125 (1985) (holding that "[i]t is undeniable that the definition of employer encompasses an officer of [a] corporation" and construing WPCL to impose liability on the officers of delinquent corporation for nonpayment of

wages). The apparent legislative purpose for including corporate officers within the statutory definition of "employer" was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments. Its reason for doing so is obvious: corporate officers make decisions dealing with personnel matters and the expenditure of corporate funds, and the imposition of personal liability upon the corporate officers making these decisions provides a powerful motivator for such officers to pay wages while the corporation is still capable of meeting its obligations to its employees. *Accord Laborers Combined Funds of W. Pa. v. Mattei,* 359 Pa.Super. 399, 518 A.2d 1296, 1300 (1986).

In addition, it is not unheard of, as defendants seem to suggest, to provide for substantive liability via the definition section of a statute. Such an interpretation is consistent with that which numerous courts have applied to statutes which are structured similarly to the Wage Act, such as the Family and Medical Leave Act of 1993, 29 U.S.C.A. §§ 2601 to 2619 (West 1999 & Supp.2000) [hereinafter "FMLA"], and the Fair Labor Standards Act, 29 U.S.C.A. §§ 201 to 219 (West 1998 & Supp.2000) [hereinafter "FLSA"]. The FLSA, for example, defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d). The majority of courts have concluded that Congress clearly demonstrated its intent to hold individuals liable for violation of the FLSA by so defining the term "employer." *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983); *see also, e.g., Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991); *Brock v. Hamad,* 867 F.2d 804, 808 n. 6 (4th Cir.1989). Similarly, the FMLA defines an "employer" as, *inter alia,* "any person who acts directly or indirectly in the interest of an employer to any of the employees of such employer." 29 U.S.C.A. § 2611(4)(A)(ii)(1). The majority of courts have concluded that the plain

language in this definition evinces a Congressional intent to provide for individual liability. *See, e.g., Buser v. Southern Food Service, Inc.,* 73 F.Supp.2d 556 (M.D.N.C.1999); *Meara v. Bennett,* 27 F.Supp.2d 288, 291 (D.Mass.1998) ("This language clearly suggests that individuals are contemplated as defendants under [the FMLA].”); *Mercer v. Borden,* 11 F.Supp.2d 1190 (C.D.Cal.1998) (holding that plain language of the FMLA compels finding that individual can be held liable as an employer). Thus, my interpretation of the Wage Act as imposing personal liability on corporate officers is consistent with other courts' interpretations of statutes which are structured in a similar fashion.

■ Although defendants have not raised the argument, the Colorado Court of Appeals expressly rejected the notion that proof that officers were actively involved in corporate decision making is required in order to impose personal liability on officers under the Wage Act. *Cusimano,* 860 P.2d at 533–34 (citing *Mohney v. McClure,* 529 Pa. 430, 604 A.2d 1021 [1992][Larsen, J. dissenting]). In *Mohney,* the Pennsylvania Supreme Court affirmed without opinion a lower court's holding that the WPCL requires proof of a corporate officer's involvement in corporate decision making in order to subject the officer to personal liability for unpaid wages. *Mohney,* 604 A.2d at 1021. The *Cusimano* court declined to adopt this rule, and, instead, followed the *Mohney* dissenters, who had concluded that the statute clearly and unambiguously provided that corporate officers are subject to personal liability for nonpayment of wages, irrespective of the degree of the officer's involvement in corporate decision and policy making. *Cusimano,* 860 P.2d at 534. I am persuaded by the *Cusimano* court's reasoning: The plain language of the Wage Act subjects officers to liability merely upon a showing of the status as an officer. Had the Colorado Legislature intended that officers have some sort of duty with respect to the unpaid wages or control over the payment of wages, it could

have drafted the Wage Act to so provide, as the legislatures of other states have done. *See, e.g.,* Kan.Stat.Ann. § 44–323(b) (providing that any corporate "officer ... or any agent having the management of the corporation who knowingly permits the corporation to engage in [a] violation [of Kansas' wage act] shall be deemed the employer for purposes of this act"); Minn. Stat.Ann. § 290.92(4) (limiting definition of "employer" to "officers of corporations who have legal control, either individually or jointly with another or others, of the payment of the wages"); N.H.Rev.Stat. Ann. § 275.42(V) (providing that officer or agent having management of corporation who knowingly permits corporation to violate the provisions of New Hampshire's wage statute shall be deemed to be employers of corporation's employees); N.C.Gen.Stat. § 95–25.2(5) (defining employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee").

■■ Defendants next contend that any construction of the Wage Act which holds corporate officers personally liable for employees' wages which the corporation has failed to pay is in conflict with the traditional notion of the liability protection which the corporate form provides. (Defs.' Br. at 19.) That is precisely the point of the Wage Act. In defining the term "employer" to encompass agents or officers as statutory employers, the Colorado legislature clearly contemplated that employees could hold such agents or officers personally liable without regard to piercing the corporate veil. As the court noted in *Cusimano*, "[t]he risk of personal liability provides an incentive for corporate officers to insure that their corporation will pay wages earned and provides some recourse for employees who corporate employer is insolvent." *Cusimano,* 860 P.2d at 534. *See also Carpenters Health & Welfare Fund,* 727 F.2d at 282 (holding that "the [Pennsylvania legislature's] only apparent purpose· [in defining agent or officer as employer in the WPCL] was to subject

these persons to liability in the event that a corporation or similar entity failed to make wage payments"). Had the Colorado legislature intended to import limits on personal liability traditionally flowing from the corporate form, it could easily have done so.

■■ Defendants finally contend that any reading of the Wage Act which holds them personally responsible for the unpaid wages herein produces an "draconian and absurd" result which creates "staggering personal liability." (Defs.' Br. at 19.) While this may well be the case, federal courts are not in the business of rewriting duly enacted state legislation merely because it creates "staggering personal liability" or produces a draconian result. The plain language of the Wage Act subjects corporate officers as statutory employers to personal liability for wages earned but unpaid at the time that an employee is discharged at the employer's volition. Accordingly, I turn to the issue of the interplay between the Bankruptcy Code and the Wage Act.

### b. Effect of NationsWay's Chapter 11 Petition on the Personal Liability of Corporate Officers

Defendants contend that, even if corporate officers and agents may be held personally liable for earned but unpaid wages under the Wage Act, such liability cannot attach here because the plain language of the Wage Act itself does not contemplate the imposition of such liability where the corporation is precluded by operation of the Bankruptcy Code from paying the employees' wages. (Defs.' Br. at 8–16.) Defendants contend that such a result obtains either (1) as a matter of statutory construction of the Wage Act; or (2) because the Bankruptcy Code preempts the Wage Act in this case. (*Id.*) I shall address each argument separately.

### i. Construction of the Wage Act

#### (1) Statutory Language

Defendants first contend that, under the plain language of the Wage Act, corporate

officers cannot be held personally liable as statutory employers for plaintiffs' pre-petition wages here because the wages cannot be "legally proven to be due" by operation of the Bankruptcy Code. (Defs.' Br. at 10.) The language on which defendants rely is located in section 8–4–104(3), which provides for the availability of penalties in addition to liability for the earned but unpaid wages. Specifically, section 8–4–104(3) provides:

> (3) If an employer refuses to pay wages or compensation in accordance with subsection (1) of this section upon request by the employee and without a good faith legal justification for such refusal, the employer is liable to the employee, *in addition to the compensation legally proven to be due,* as a penalty for such refusal the greater of an amount equal to fifty percent thereof or an amount equal to the amount of wages payable per day to such employee not to exceed ten days.

Colo.Rev.Stat. § 8–4–104(3).

■■■■ I am unpersuaded. Defendants' argument is an attempt to combine the general liability provision contained in section 8–4–104(1) with the penalty provision contained in section 8–4–104(3). Such a construction of the statute impermissibly conflates the general liability provision with the penalty provision. Simply put, the imposition of general liability under the Wage Act is one matter, but the imposition of a penalty is another matter entirely. Under section 8–4–104(1), the employer is liable for those amounts "earned and unpaid at the time of [the employee's] discharge...." *Id.* § 8–4–104(1). Only if the employer refuses to pay the amount legally proven to be due—i.e., the amount earned and unpaid at the time of the employee's discharge—is the employer subjected to the penalty provisions of the Wage Act. *Accord Cusimano,* 860 P.2d at 534 (rejecting corporate officers' argument that they could only be held liable for wages under the Wage Act upon proof that they refused to pay wages without good

faith legal justification after receiving written request; concluding elements required for imposition of penalty not required for recovery of fees). My conclusion is further bolstered by the structure of the statute. The fact that the legislature elected to place the language governing liability for wages earned and unpaid in a separate subsection from the language imposing a penalty for refusing to pay after request the wages earned but unpaid at the time of discharge suggests that the legislature intended for different conduct to trigger the application of each subsection.

■■■■ Defendants also contend that language of the Wage Preference Act, Colo.Rev.Stat. §§ 8–10–101 to 103 (1999) [hereinafter "Wage Preference Act"], demonstrates that Colorado's legislature did not intend for the Wage Act to apply when a corporation files for bankruptcy protection. (Defs.' Br. at 17–18.) The Wage Preference Act states that when the business of any corporation is suspended by the action of creditors or put into the hands of a receiver or trustee, then wage debts owing to employees are treated as preferred claims and they may collect the wages from the seized funds. Colo.Rev. Stat. § 8–10–101. The Wage Preference Act further provides that, when the funds realized from the sale of the seized property are insufficient to pay the total amount of all claims presented, then the claims are prorated as between the preferred creditors. *Id.* H–10–103. Defendants contend that a conflict arises between the Wage Preference Act and the Wage Act if the Wage Act is read to extend liability to a receiver because: (1) a receiver is an "employer" under the Wage Act; and (2) if a receiver were to attempt to prorate wage claims in accordance with the Wage Preference Act, he or she would run afoul of the Wage Act by failing to pay the wage claim in full. (Defs.' Br. at 18.) While this is an interesting argument, I need not, at this juncture, decide whether defendants' scenario would actually play out as they predict under the circumstances presented

here. The fact of the matter—which defendant conveniently ignore for purposes of their argument—is that a petition under Chapter 11 of the Bankruptcy Code has actually been filed here. The Wage Act and the Wage Preference Act are not necessarily inconsistent in the situation which defendants hypothesize because the Wage Act provides for a cause of action to collect wage payments from an employer, whereas the Wage Preference Act merely provides for setting priorities for claimants against one another for the corporation's residual assets in the event of a break up under state law. Accordingly, I reject the argument that the Wage Preference somehow trumps the Wage Act.

### (2) Case Law

Defendants also contend that the case law supports reading a "bankruptcy exception" into the Wage Act. Defendants rely— ironically—on language in *Cusimano*, 860 P.2d at 532, 534, to the effect that corporate officers can be liable for unpaid wages only "just as the corporation would be[,]" and "to the same extent as the corporation." (Defs.' Br. at 14–15.) Defendants contend that this language in the *Cusimano* opinion establishes that a statutory employer's liability under the Wage Act is contingent upon the establishment of the conventional employer's liability. If the conventional employer cannot be held liable by operation of the Bankruptcy Code, defendants reason, then the statutory employer's contingent liability for the wages is not triggered. There are three difficulties with this argument. First, *Cusimano* is not binding authority. Second, *Cusimano* is factually distinguishable from this case because, while the conventional employer was insolvent in that case, it had not filed for bankruptcy protection and, thus, had also been held liable for the unpaid wages. *Cusimano*, 860 P.2d at 532–33. Consequently, the issue of whether the defendant's liability was contingent in that case was not before the court. Finally, although defendants' reading of *Cusimano* as holding that the corporate

officers' liability was contingent upon the corporation's liability is plausible, it is equally plausible to read the opinion as standing for proposition that the corporate officer cannot be held liable for a dollar amount greater than that which the corporation could be held liable if it were solvent and able to pay. In other words, if the conventional employer were to be found liable for $500 in earned but unpaid wages, a corporate officer's exposure to liability would also be $500. I also note that, in the typical case, a corporate officer's personal liability for wages under the Wage Act could be viewed as "contingent" in the sense that the employee will generally first attempt to obtain payment from the conventional employer and will only resort to statutory employers such as corporate officers once an attempt to collect from the conventional employer has met with failure. Thus, I conclude that *Cusimano* is of little help to defendants here.

Defendants also rely on *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir.1997) (*"Belcufine II"*), in support of reading in a bankruptcy exception into the Wage Act. The plaintiffs in *Belcufine II* were a group of former employees of the Shenango Corporation ("Shenango"), who sued Shenango's corporate officers, defendants Mark and Andrew Aloe, under the WPCL. *Id.* at 635. The plaintiffs claimed that the Aloes were personally liable to plaintiffs pursuant to the WPCL for wages which were earned but unpaid by Shenango as of the date that Shenango filed for relief under Chapter 11 of the Bankruptcy Code. *Id.* at 635. The bankruptcy court rejected the plaintiffs' WPCL claim, reasoning that because Shenango's failure to pay benefits occurred after the bankruptcy petition was filed, the Bankruptcy Code operated to prevent the wages from being "due and payable" under the WPCL. *Belcufine v. Aloe (In re Shenango Group, Inc.)*, 186 B.R. 623 (Bankr. W.D.Pa.1995) (*"Belcufine I"*). The Third Circuit, in a divided panel opinion, affirmed. The majority in *Belcufine II* recognized that, under settled Pennsylvania

law, the top management of a company can be held liable under the WPCL, and concluded that, absent the filing of the bankruptcy petition, the Aloes, as officers of Shenango, would have been liable for the earned by unpaid wages by application of the WPCL. *Id.* The majority held, however, that an officer's liability under the WPCL is "contingent" on the corporation's failure to pay its own debts which are legally due and payable. *Id.* at 639. The majority reasoned that once a corporation files a Chapter 11 petition, the corporation is only obligated to pay wages to the extent required in the bankruptcy workout. *Id.* Because all of the wages sought in *Belcufine II* technically came due in the post-petition period, the corporation was not permitted to pay these claims, and the amounts therefore did not become "due and payable" for purposes of the WPCL. Because Shenango did not owe these amounts, the majority reasoned, neither could the Aloes be held personally liable. *Id.*

The majority pointed to the goals underlying the WPCL as supporting this conclusion. Specifically, the majority reasoned that the legislative purpose in holding agents and officers personally liable for unpaid wages "is to give those agents an incentive to pay wages and benefits while the corporation still has the resources to do so." *Id.* (citations omitted). The majority hypothesized that the WPCL would deter the officers of a corporation under the threat of bankruptcy from strategically diverting corporate funds that are meant to go toward paying wages and benefits into a high risk gamble which could theoretically prevent the bankruptcy, but which would most likely fail. *Id.* (citations omitted). Once a corporation has filed for bankruptcy, however, its management no longer has the power to choose to strategically divert the corporation's funds away from wages because the Bankruptcy Code prevents the corporation from paying the post-petition wages at all. *Id.* at 640. Thus, the court reasoned, the officers would not be in a position of choosing not

to pay post-petition wages, and the WPCL could not come into play to create personal liability for nonpayment of those wages. *Id.*

The dissent in *Belcufine II*, which plaintiffs here encourage the court to follow, squarely rejected the analysis which the majority employed and concluded that there was no statutory basis in the WPCL for finding a bankruptcy exception to a corporate officer's personal liability. The dissent noted that, under the WPCL, "the definition of employer encompasses 'every person, firm, partnership, association, corporation, receiver or the officer of any of the above-mentioned classes employing any person in [Pennsylvania].'" *Id.* at 642 (Greenberg, J. dissenting) (quoting Pen. Stat.Ann. tit. 43, § 260.2a). The dissenting judge concluded that, under this definition, "[t]here cannot be the slightest doubt but that the legislature contemplated that if the corporate employer ... did not make the payments required under the WPCL, then the decision making agents and officers as statutory employers would be liable for them[,]" irrespective of whether the corporation legally could not make the payments for whatever reason. *Id.* The dissent further reasoned that the whole point of including corporate officers in the statutory definition of employer was so that employees would have a remedy when the conventional employer would or could not make the payment which the WPCL mandates. *Id.* While the dissenting judge agreed with the majority that one purpose of the WPCL is to deter officers from strategically diverting funds from payment of wages, the judge also contended that an officer could be liable without diverting funds, and provided the example of a new business which never generated income but which incurred obligations under the WPCL. *Id.* at 643. In such a circumstance, reasoned the dissenter, the officers of that unprofitable business would be personally liable, even though they had not diverted the funds.

*Id.* Accordingly, the dissenting judge concluded that there was no statutory or policy basis for reading a bankruptcy exception to personal liability into the WPCL, and that importing such an exception into the WPCL amounted to impermissible judicial redrafting of the statute. *Id.*

 The majority's opinion in *Belcufine II* is not binding upon this court, and I am considerably more persuaded by the reasoning of the dissent. As with the WPCL, there is no statutory language in the Wage Act which supports reading in a "bankruptcy exception" to personal liability for statutory employers such as corporate officers. Rather, the Wage Act by its plan and explicit language imposes liability on statutory employers without exception. I quite agree with the argument which the *Belcufine II* dissent advanced that the creation of such a bankruptcy exception to personal officer liability would result in judicial rewriting of the Wage Act and would frustrate the purpose of the Wage Act by relegating the employees to a remedy against the corporate employer only as provided in the plan of reorganization. Nothing in the Wage Act can remotely be read as extending to corporate officers the bankruptcy defense which is available to the conventional employer. Taken to its logical extreme, defendants' argument would mean that a corporate officer could avoid liability under the Wage Act any time that the corporation—i.e. conventional employer—possessed a legal defense to liability under the Wage Act. Such a result is contrary to the plain language of the statute and would defeat the clearly manifested intent of the Colorado legislature that employees be able to hold statutory employers personally liable for their unpaid wages. Accordingly, I conclude that neither the plain language of the Wage Act, nor the various case law construing the Wage Act and other similar state statutes, supports this court creating a bankruptcy exception to the imposition of personal liability upon corporate officers. Consequently, defendants are not entitled to summary judgment on this basis.

### ii. Bankruptcy Code Preemption of the Wage Act

 I turn next to defendants' argument that the Bankruptcy Code preempts plaintiffs' Wage Act claims. The Supremacy Clause of the Constitution provides that "[t]his Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const., Art. VI, cl. 2. Any state law that conflicts with a federal law is, therefore, "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). The Supreme Court has cautioned that statutory preemption provisions are to be narrowly and strictly construed, and has directed courts to "look to the provisions of the whole law, and to its object and policy" in considering whether a federal statute preempts a particular state law. *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). The Supreme Court has further instructed courts to consider two presumptions regarding the nature of preemption:

> First, because the States are independent sovereigns in our federal system, [the Supreme Court has] long presumed that Congress does not cavalierly preempt state-law causes of action.... Second, [the] analysis of the scope of the statute's pre-emption is guided by [the Court's] oft-repeated comment ... that the purpose of Congress is the ultimate touchstone in every pre-emption case.

*Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996).

 State law may be preempted by an express congressional statement, by federal occupation of the field, or by direct conflict with federal law. The Supreme Court has instructed that preemption occurs when any of six conditions exist:

 when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, [2] when there is

outright or actual conflict between federal and state law, [3] where compliance with both federal and state law is in effect physically impossible, [4] where there is implicit in federal law a barrier to state regulation, [5] where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or [6] where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted).

▬▬ Defendants contend that a direct conflict arises because the Bankruptcy Code assigns pre-petition wage claims of employees to a third priority for $4300 in back wages, 11 U.S.C.A. § 507(a)(3) (West Supp.2000), whereas the Wage Act requires immediate payment of the full amount of wages, Colo.Rev.Stat. § 8–4–104(1). (Defs.' Br. at 22.) Because the Bankruptcy Code prohibits the payment of pre-petition debts upon the filing of a bankruptcy petition, *see* 11 U.S.C.A. § 362(a) (West 1993 & Supp.2000), defendants contend that a direct conflict arises. (Defs.' Br. at 22–23.) Unquestionably, plaintiffs' Wage Act claims here would be preempted if plaintiffs had brought the claims against NationsWay. Defendants' argument obscures the fact that Nations-Way—not defendants—filed the bankruptcy petition in this case. NationsWay—not defendants—is therefore entitled to the protections of the Bankruptcy Code, including the automatic stay, and the prioritizing of pre-petition debts thereunder. In the abstract at least, defendants could have paid plaintiffs' wage claims from their own personal assets without violating the Bankruptcy Code's provisions. In addition, defendants have not cited any language in the Bankruptcy Code which ex-

tends the Bankruptcy Code's protection to individuals or entities which have not filed a bankruptcy petition, and the court has not discovered any such statutory language in its independent research. Had Congress intended that bankruptcy protection extend beyond the entity filing the bankruptcy petition, it could have drafted the Bankruptcy Code to so provide. In the absence of such a statutory provision, no direct conflict exists between the Bankruptcy Code and the Wage Act in this case. Accordingly, I conclude that the Bankruptcy Code does not directly preempt plaintiffs' Wage Act claims.

▬▬ Defendants alternatively contend that plaintiffs' Wage Act claims, if not directly preempted, are preempted because permitting plaintiffs' Wage Act claims to go forward here would "stand[ ] as an obstacle to the accomplishment and execution of the full objectives of Congress" in enacting the Bankruptcy Code. (Defs.' Br. at 22–24.) As the Tenth Circuit has noted, "[t]he Bankruptcy Code is fundamentally concerned with equity and has as one of its objectives to enable the debtor to make a fresh start." *In re Manning,* 831 F.2d 205, 210 (10th Cir.1987) (citations omitted). Defendants contend that the imposition of personal liability on corporate officers under the Wage Act creates an obstacle to the accomplishment of the objectives of the Bankruptcy Code because the corporation's "fresh start" would come at a substantial personal cost to the officers, thereby affecting the willingness of corporate officers to file for bankruptcy protection on the corporation's behalf.[5] (*Id.;* Defs.' Reply at 12.) While this argument has some superficial appeal, closer scrutiny reveals its flaws. An officer is at risk for personal liability under the Wage Act when the employee's earned wages are not paid upon the employee's discharge, irrespective of the reason that the wages are unpaid. In other words, the fact that the corporation has filed a petition for

---

5. The court observes that the corporation's "fresh start" also comes at a substantial per-

sonal cost to the corporation's employees.

relief under chapter 11 of the Bankruptcy Code is of no moment in the imposition of liability on a corporate officer. The only relevant facts are whether the defendant is an "employer" within the meaning of the Wage Act and whether earned but unpaid wages are owed to the discharged employee. A corporate officer in a struggling corporation faced with a choice between closing the corporation altogether or filing for bankruptcy protection faces the same potential liability under either scenario. The personal liability which defendants face has nothing to do with chapter 11 of the Bankruptcy Code but, rather, arises from their status as corporate officers. Because the imposition of personal liability on officers here does not create substantial obstacles to Congress' intent in enacting the Bankruptcy Code, I conclude that the Bankruptcy Code does not preempt plaintiffs' Wage Act claims. Accordingly, defendants are not entitled to summary judgment on the basis of Bankruptcy Code preemption of plaintiffs' Wage Act claims.

### c. LMRA Preemption of the Wage Act

Finally, defendants contend that the LMRA preempts the Wage Act claims for those of the plaintiffs who were subject to a collective bargaining agreement prior to their discharge.[6] (Defs.' Br. at 24–34.)

Section 301 of the LMRA, 29 U.S.C.A. § 185(a), provides:

Suits for violation of contracts between an employer and a labor organization representing employees ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

This section preempts those state causes of action:

addressing "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, ... whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." When resolution of a state law claim depends upon analysis of the terms of a labor agreement, section 301 will preempt that claim.

---

**6.** I note that the plaintiffs have attempted to avoid any reference to the various collective bargaining agreements entirely by "agreeing" with defendants that amounts listed in a spreadsheet, which NationsWay's Manager of Payroll JoyEllen Beck prepared, are the amounts which the union member plaintiffs are owed for their final wages. (Pls.' Resp., Statement of Additional Undisputed Material Facts ¶¶ 2, 7 ["agreeing" that the amounts shown in spreadsheet are correct with respect to the plaintiffs who are union members].) NationsWay's payroll department used a computer software program called S2K to process the calculation and payment of wages to employees. (*Id.*, Statement of Additional Undisputed Material Facts ¶ 3; *admitted at* Defs.' Reply, Resp. Concerning Pls.' Additional Undisputed Material Facts.) In order to determine an employee's accrued paid time off, NationsWay's payroll personnel would refer to (1) "cheat sheets" which Beck prepared based upon her own review of the various collective bargaining agreements, (2) collective bargaining agreements, (3) updates to collective bargaining agreements, and (4) individual personnel files. (Defs.' Reply, Resp. Concerning Pls.' Additional Undisputed Material Facts ¶ 4.) This information would then be input into the S2K system in order to calculate the employee's wages and accrued paid time off. Using this method, Beck performed calculations of the wages owed to each of the plaintiffs herein who are union members, and summarized these amounts in an exhibit presented by plaintiffs. (Pls.' Resp., Ex. 2 [Summary Spreadsheet].) Beck also prepared individual spreadsheets for each plaintiff in this litigation. (Defs.' Reply, Ex. A [Individual Spreadsheets].) Plaintiffs attempt to "stipulate" that the amounts in the summary and individual spreadsheets are the amounts owing and contend that there is therefore no need to refer to or interpret any collective bargaining agreement. (*Id.* at 29.) I am thoroughly unpersuaded. The amounts in the summary and individual spreadsheets derive from Beck's interpretation of collective bargaining agreements. The spreadsheets do not somehow supplant the collective bargaining agreements as the basis for calculating the amounts to which plaintiffs claim they are entitled here.

*Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1155 (10th Cir.1991) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11, 105 S.Ct. 1904, 1911 [1985]).

 Although the language of section 301 is limited to "[s]uits for violation of contracts," courts have concluded that most state-law actions that require the interpretation of a labor agreement will be preempted. If evaluation of a state-law claim is "'inextricably intertwined' with consideration of a collective bargaining agreement, and/or if state law 'purports to define the meaning of the contract relationship, that law is preempted.'" *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1121 (10th Cir.1995) (quoting *Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. at 1912). Although the preemptive effect of section 301 is unquestionably broad, preemption does not occur in every situation where a collective bargaining agreement comes into play. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by [section] 301 or other provisions of the federal labor law." *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911. For instance, section 301 says nothing about the substantive rights which a State may provide to its workers when adjudication of those rights does not involve the interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988) (holding that section 301 does not preempt state-law retaliatory discharge claim). In addition, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994).

Defendants contend that plaintiffs' Wage Act claims are preempted here because determination of the amounts due to plaintiffs will require that the court interpret various provisions of the collective bargaining agreements. (Defs.' Br. at 25–31.) Plaintiffs respond that the Supreme Court's holding in *Livadas* governs here. (Pls.'s Resp. at 21–23.) In *Livadas*, the Supreme Court held that a discharged employee's claim predicated upon a state-law right to receive a penalty payment from her employer for late payment of wages was not preempted under the LMRA, even though the penalty was tacked to her wages, which were governed by a collective bargaining agreement. *Livadas*, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93. At issue in *Livadas* was a California law which: (1) required employers to pay all wages due immediately upon an employee's discharge; (2) imposed a penalty for refusal to pay promptly; and (3) placed responsibility for enforcing these provisions on California's Commissioner of Labor. *Id.* at 112–13, 114 S.Ct. at 2072 (citing Cal.Lab.Code. §§ 201, 203). After the plaintiff's former employer refused to pay her the wages owed upon her discharge, but paid them a three days later, the plaintiff filed a claim seeking the penalty provided for in pursuant to section 203 of the California Labor Code. *Id.* at 111, 114 S.Ct. at 2072. The Commissioner of Labor responded to the plaintiff's request with a form letter construing section 229 of the California Labor Code as barring him from enforcing the plaintiff's claim because the terms and conditions of her employment were governed by a collective bargaining agreement containing an arbitration cause. *Id.* 112–13, 114 S.Ct. at 2072. The provisions of section 229 expressly precluded the Commissioner from adjudicating any dispute concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause. Cal.Lab.Code § 229. After the Commissioner refused to enforce the plaintiff's penalty claim, she commenced an action pursuant to 42 U.S.C.A. section 1983, alleging that the Commissioner's policy of non-enforcement of penalty claims in such cases was preempted by federal law because it abridged her

rights under section 7 of the National Labor Relations Act, 49 Stat. 452, as amended, 29 U.S.C. § 157. *Livadas,* 512 U.S. at ——, 114 S.Ct. at 2073. The Commissioner argued that the non-enforcement policy and section 229 of the California Labor Code were required by section 301 of the LMRA, which has been read to preempt state-court resolution of disputes turning on the rights of parties under collective bargaining agreements. *Id.* at 121, 114 S.Ct. at 2077.

In a unanimous opinion, the Court rejected the Commissioner's argument and instead held preempted the California Labor Commissioner's policy of refusing to enforce those provisions when the terminated employees were covered by a collective bargaining agreement containing an arbitration clause. Relying upon its prior decisions in *Allis–Chalmers,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206, and *Lingle,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, the Court held that section 301 could not be read so broadly as to preempt non-negotiable rights which state law confers upon individual employees. *Livadas,* 512 U.S. at 123–24, 114 S.Ct. at 2078. In reaching this conclusion, the Court emphasized that it is the legal character of the claim as "independent" of rights created pursuant to the collective bargaining agreement that decides whether a state cause of action may proceed. *Id.* at 123, 114 S.Ct. at 2078. The Court reiterated that "[w]hen the meaning of contract terms is not the subject of the dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124, 114 S.Ct. at 2078 (citing *Lingle,* 486 U.S. at 413, n. 12, 108 S.Ct. at 1885, n. 12 ["A collective bargaining agreement may, of course, contain information such as rate of pay ... that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled."] ). Accordingly, the Court concluded that these principles foreclosed even a colorable argument that the plaintiff's penalty claim under section 203 of the California Labor Code was preempted. The Court observed that, beyond the simple need to refer to bargained for wages rates in computing the penalty, the collective bargaining agreement was irrelevant to the dispute between the plaintiff and her employer.

The Supreme Court distinguished the plaintiff's situation from the situation in *Plumbing, Heating and Piping Employers Council of Northern California v. Howard,* 53 Cal.App.3d 828, 836, 126 Cal.Rptr. 406 (1975), wherein an employee sought to have paid an unpaid wage claim based upon his interpretation that his collective bargaining agreement entitled him to a higher wage. The employee there asserted that under the collective bargaining agreement, he was entitled to receive a foreman's rate of pay and not a journeyman's. The Court observed, "that sort of claim, however, derives its existence from the collective bargaining agreement, and accordingly, falls within any customary understanding of arbitral jurisdiction." *Livadas,* 512 U.S. at 113 n. 6 & 125 n. 20, 114 S.Ct. at 2072 n. 6 & 2079 n. 20. The Court in *Livadas* also acknowledged that "Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in *Lingle* and *Lueck,*" but found that *Livadas,* "in which non pre-emption under § 301 is clear beyond peradventure" was "not a fit occasion ... to resolve disagreements that have arisen over the scope of our earlier decisions." *Livadas,* 512 U.S. at 124 n. 18, 114 S.Ct. at 2078 n. 18.

Defendants, in contrast, contend that the Third Circuit's divided panel opinion in *Antol v. Esposito,* 100 F.3d 1111 (3d Cir. 1996), should govern in this case. The plaintiffs in *Antol* had, before their discharge, been subject to a collective bargaining agreement, and sought to collect their earned but unpaid wages from the corporate officers personally under the WPCL. *Id.* at 1114–15. The Third Circuit

held, over a dissent, that under the WPCL, the corporate officers clearly fit within the definition of "employer," but that the WPCL's definition "if applied to the [LMRA] would substantially alter the scope and enforcement of the typical collective bargaining agreement." *Id.* at 1119–20. The majority concluded that the WPCL and the LMRA were plainly in conflict because the signatory employer to a collective bargaining agreement would not be deprived of its arbitral and other rights under the collective bargaining agreement, whereas the officers would be personally liable. The majority concluded that a number of negative effects on federal labor law would obtain from expanding the definition of employer in collective bargaining agreements to individual officers, including permitting individual employees to sidestep grievance procedures in a collective bargaining agreement and subjecting employers doing business in a number of states to the vagaries of state law. *Id.* at 1121. The majority specifically rejected the plaintiffs' argument that *Livadas* required a different result, finding distinctions because (1) there was no need in *Livadas* to refer to the collective bargaining agreement to calculate the penalty, and (2) there was no argument of interference in the arbitral process in *Livadas*. *Id.* at 1121.

The dissent in *Antol* also bears analysis, however. *Id.* (Mansmann, J., dissenting). In dissent, Judge Mansmann concluded that *Livadas* compelled the opposite conclusion from that which the majority reached. *Id.* at 1121–24. The dissenting judge concluded the WPCL was virtually identical to the law at issue in *Livadas* in that it both granted a right of compensation for earned wages and provided for a penalty for non-payment. *Id.* at 1123. In addition, the dissenting judge was unpersuaded by the majority's attempt to distinguish *Livadas* on the basis that there was no dispute over the amount due because this distinction "would mean that an employer could utilize section 301 preemption to avoid liability by raising a dispute con-

cerning the amount of wages owed in any given case." *Id.* The dissenting judge further noted that there were no ambiguities in the applicable collective bargaining agreement and, thus, there was no need for a court to determine the meaning of provisions of a collective bargaining agreement. *Id.* at 1124. All a court would require to determine the amount of wage was the employees' rates of pay from the collective bargaining agreement, a calendar, and the employees' personnel records. *Id.*

■ While it is a close question, I conclude that *Livadas* compels the conclusion that plaintiffs' Wage Act claims are not preempted here. Like the rights in *Livadas*, the rights which the Wage Act secures to plaintiffs are non-negotiable and non-waiveable. Colo.Rev.Stat. § 8–4–125 ("Any agreement, written or oral, by any employee purporting to waive or modify his rights in violation of this article shall be void."). Were the court to extend the preemption doctrine to allow for preemption by virtue of such a waiver "parties would be able to immunize themselves from suit under state laws of general applicability by simply including their unlawful behavior in a labor contract." *Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers,* 109 F.3d 1353, 1357 (9th Cir.1997); *see also Lingle,* 486 U.S. at 412, 108 S.Ct. at 1885 (noting that such a rule would intrude on traditional power of states to set minimum labor standards).

In addition, the Supreme Court in *Livadas* established that, in the preemption context, there is a difference between those claims which require the interpretation or construction of a collective bargaining agreement and those which merely require the court to "look at" the agreement. *Livadas,* 512 U.S. at 124, 114 S.Ct. at 2078 (holding that "[w]hen the meaning of contract terms is not the subject of the dispute, the bare fact that a collective bargaining agreement will be consulted in the

course of state-law litigation plainly does not require the claim to be extinguished"). As the Ninth Circuit has noted, " 'the line between reference to and interpretation of an agreement may be somewhat hazy.' " *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir.2000) (quoting *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748–49 (9th Cir. 1993)). Nevertheless, defendants do not point to any provisions of the relevant collective bargaining agreements which are uncertain or ambiguous. Defendants have not identified any provisions of the relevant agreements that will require the more than the court look at, consider, and apply the provisions with the use of a calendar, an employee's personnel records, and a calculator. While the court may have to read and apply numerous provisions of the collective bargaining agreements, and a certain amount of arithmetic may be required, this is not enough to compel a finding of LMRA preemption. Accordingly, I conclude that the LMRA does not preempt plaintiffs' Wage Act claims and, thus, defendants are not entitled to summary judgment on this basis.

#### d. Application to Summary–Judgment Motions

Based on the foregoing discussion, defendants are not entitled to summary judgment on plaintiffs' Wage Act claims. Defendants, as corporate officers, may be held personally liable for plaintiffs' earned but unpaid wages under the plain language of the Wage Act. Plaintiffs' Wage Act claims are, moreover, not preempted by either the Bankruptcy Code or the LMRA. Accordingly, defendants' motion for summary judgment is denied.

 Plaintiffs have moved for summary judgment as to defendants' liability for wages and the statutory penalty, as provided for in the Wage Act. It is undisputed in this case that: (1) plaintiffs were employees of NationsWay; (2) McMorris, Roth, Roberge, Feehan, Barkley, Cline, Wolfe, and Jensen were NationsWay offi-

cers at all times relevant to this dispute and, hence, are "employers" within the meaning of the Wage Act; (3) plaintiffs were discharged from their employment at NationsWay's volition; (4) at the time of their discharge from employment, plaintiffs were owed wages or compensation for labor or services performed; and (5) McMorris, Roth, Roberge, Feehan, Barkley, Cline, Wolfe, and Jensen have not paid plaintiffs the earned but unpaid wages. Thus, plaintiffs are entitled to summary judgment as to McMorris, Roth, Roberge, Feehan, Barkley, Cline, Wolfe, and Jensen's liability for their unpaid wages. Plaintiffs are not entitled to summary judgment as to Hampton and Smith, however, because there is a disputed issue of fact as to whether those defendants were ever NationsWay officers. Accordingly, plaintiffs' motion for partial summary judgment is denied as to Hampton and Smith.

 Plaintiffs have also moved for summary judgment that defendants are liable for the statutory penalty provided for in section 8–4–104(3). As discussed above, the Wage Act provides that an employer who refuses a request by the employee for payment of earned but unpaid wages "without a good faith legal justification for such refusal," is also liable to the employee for a penalty. Colo.Rev.Stat. § 8–4–104(3). The Colorado Court of Appeals has held that "[t]he phrase 'without good faith legal justification' means willfully withheld without good cause." *Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146, 1148 (Colo.Ct.App.1995) (citing *Beasley v. Mincomp Corp.*, 683 P.2d 370 [Colo.Ct.App.1984] ). This determination is a determination of fact which is not susceptible to resolution at this stage of the proceeding. Accordingly, plaintiffs' motion for summary judgment on defendants' liability for statutory penalties under the Wage Act is denied.

#### 3. Conclusion

Based upon the foregoing, it is therefore

ORDERED as follows:

1. Defendants' motion for summary judgment is DENIED.

2. Plaintiffs' motion for partial summary judgment is GRANTED in part and DENIED in part. Plaintiffs' motion is granted as to Defendants Jerry D. McMorris, Harold R. Roth, George R. Roberge, James R. Feehan, Neal Barkley, Robert Cline, Cal Wolfe, and Terry Jensen as to liability for plaintiffs' earned and unpaid wages pursuant to Colo.Rev.Stat. § 8-4-104(1). The motion is DENIED in all other respects.

3. Plaintiffs Ralph T. Leonard and John R. Klaas' claims against McMorris and Roth under Colorado's short check statute are hereby DISMISSED.